506 A.2d 445

**In re KUMA K–9 SECURITY, INC. Renewal of Detective License.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Argued Jan. 23, 1986.

Filed March 19, 1986.

W. Wayne Punshon, Media, for appellant.

Jeffrey M. Sherman, Media, for appellee.

Before OLSZEWSKI, TAMILIA and KELLY, JJ.

TAMILIA, Judge:

In 1976, Kuma K–9 Security Inc. (hereinafter Kuma) was granted a license to operate a private detective agency under the "Private Detective Act of 1953", 1953, Aug. 21, P.L. 1273 § 1, 22 P.S. § 11 et seq. Two renewals were filed and the license reissued in 1978 and 1980. In 1983, the renewal application was opposed by the District Attorney of Delaware County. This opposition was based on an alleged conflict of interest and potential for abuse involving John Morris, the president and one-third stockholder of Kuma, who also held the position of lieutenant in the Upper Darby police department.

The Court of Common Pleas granted the license to Kuma and the District Attorney appealed to this Court. In a Memorandum Opinion, we reversed on public policy grounds finding that although no statutory bar exists to issuing licenses to those engaged in full-time police work, case law indicates a strong disapproval of issuing licenses to those in a position of public trust. *In Re: Kuma K–9 Security*, 339 Pa.Super. 624, 488 A.2d 1170 (1984).

Subsequent to this decision, John Morris resigned his position with Kuma and transferred his stock to his wife. The board of directors of Kuma (Mrs. Morris, James Fleming and Elizabeth Fleming) then elected new officers and reapplied for a detective's license.

In accordance with the statute, Kuma submitted two certificates with its application stating that the vice presi-

dent, James Fleming, had been regularly employed as a detective for at least three years.

At the hearing on the application, the district attorney continued to oppose the granting of the license. It was established that although Mr. Morris, now a captain with the Upper Darby police department, had resigned his position with Kuma and transferred his stock, he was being retained as a consultant, performing similar duties as he previously had done at the same salary. (N.T. 3/4/85 p. 66–69) The district attorney contended that under these facts a conflict still existed. In addition, it was argued that none of the applicants met the qualifications required under 22 P.S. § 14,[1] specifically that Mr. Fleming's experience as a private detective did not qualify him under the statute.

1. 22 P.S. § 14(a) in pertinent part reads:
 ### § 14. Application for licenses
 (a) If the applicant is a person, the application shall be signed and verified by such person, and if the applicant is a partnership or association, the application shall be signed and verified by each individual composing or intending to compose such partnership or association. The application shall state the full name, age, residence, present and previous occupations, of each person or individual so signing the same, that he is a citizen of the United States, and shall also specify the name of the city, borough, township, or incorporated town, stating the street and number if the premises have a street and number, and otherwise such apt description as will reasonably indicate the location thereof, where is to be located the principal place of business, and the bureau, agency, sub-agency, office or branch office for which the license is desired, and such further facts as may be required by the court of quarter sessions, to show the good character, competency and integrity of each person or individual so signing such application. Each person or individual signing such application shall, together with such application, submit to the court of quarter sessions his photograph, in duplicate, in passport size, and also fingerprints of his two hands, recorded in such manner as may be specified by the court of quarter sessions. Before approving such application, it shall be the duty of the court of quarter sessions to compare such fingerprints with fingerprints of criminals now or hereafter filed in the records of the Pennsylvania State Police. Every such applicant shall establish, to the satisfaction of the court of quarter sessions and by at least two duly acknowledged certificates, that such applicant, if he be a person, or, in the case of a partnership, association, or corporation, at least one member of such partnership, association, or corporation, has been regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a

The Common Pleas Court of Delaware County, by the Honorable Melvin G. Levy, granted the license to Kuma and this appeal followed.

The appellant asserts error by the lower court in ruling on the two issues raised at the hearing contending that the facts presented required denial of the license.

The first issue we will address is whether the term "regularly employed as a detective" in 22 P.S. § 14(a) requires that employment to be as a law enforcement officer.

The appellant asserts that experience as a private detective does not satisfy the statutory requirement that at least one member of the applying corporation has been "regularly employed as a detective" for not less than three years. We do not agree.

■ We support the finding of the lower court that the term "detective" or the phrase "regularly employed as a detective" have never been limited to persons employed by law enforcement agencies. (Opinion, Levy, J. filed June 5, 1985) In support of this position are the holdings in *In Re: Harding*, 246 Pa.Super. 180, 369 A.2d 871 (1977) and *In Re: Sentry Security Inc.*, 490 Pa. 578, 417 A.2d 190 (1980) where the courts applied a functional analysis to determine the meaning of the phrase "regularly employed as a detective." Both decisions looked to 22 P.S. § 12[2] for a listing of

member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years.

**2.** 22 P.S. § 12

**§ 12. Definitions**

(a) "Private detective business" shall mean and include the business of private detective, private detective business, the business of investigator, or the business of watch, guard, or patrol agency.

(b) "Private detective business" shall also mean and include separately or collectively, the making, for hire, reward, or for any consideration whatsoever, of any investigation or investigations for the purpose of obtaining information with reference to any of the following matters, notwithstanding the fact that other functions and services may also be performed for fee, hire, or reward.

activities performed by those engaged in the "private detective business" and made evaluations based on the activities engaged in by the applicant. The employer of the applicant was not considered the key to ascertaining the applicant's

(1) Crime or wrongs done or threatened against the government of the United States of America or any state or territory of the United States of America.

(2) The identity, habits, conduct, movements, whereabouts, affiliations, associations, transactions, reputation, or character, of any person, group of persons association, organization, society, other groups of persons, partnership, or corporation.

(3) The credibility of witnesses or other persons.

(4) The whereabouts of missing persons.

(5) The location or recovery of lost.or stolen property.

(6) The causes and origin of, or responsibility for, fires or libels, or losses, or accidents, or damage, or injuries, to real or personal property.

(7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.

(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employees, agents contractors and subcontractors.

(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return thereof, or the performing of the service of such guard of other person, for any of said purposes.

The foregoing shall not be deemed to include persons engaged in the business of investigators for or adjusters for insurance companies, nor persons in the exclusive employment of common carriers subject to regulation by the Interstate Commerce Commission or the Public Utility Commission of the Commonwealth of Pennsylvania, or investigators in the employment of credit bureaus.

(c) The terms "the business of detective agency", the "business of investigator", the "business of watch, guard or patrol agency", and the terms "private detective" or "investigator" shall mean and include any person, partnership, association, or corporation, engaged in the private detective business, as defined in subsections (a) and (b) of this section, with or without the assistance of any employe or employes.

(d) The term "commissioner" shall mean the Commissioner of the Pennsylvania State Police. 1953, Aug. 21, P.L. 1273, § 2.

qualifications for licensing but rather the experience the applicant had obtained in performing the functions designated by statute as distinctive of a "private detective business." We think this approach, which was followed by the lower court in the present case, is proper.

 The facts indicate that Mr. Fleming has been associated with Kuma for eleven years, working an average of thirty to forty hours a week. During this time, he took part in hundreds of investigations involving nine of the eleven activities listed in 22 P.S. § 12(b). (N.T. 3/4/85 pp. 37–50) Based on this experience, under the analysis adopted by the court, it was proper to determine Mr. Fleming qualified under the statute. As to this issue, we thus affirm the holding of the lower court.

The second issue raised by appellant concerns the potential conflict of interest created by the granting of the license.

Although John Morris resigned from his position as president of Kuma and relinquished his stock holdings, he is still employed as a consultant by Kuma and continues to draw his salary. (N.T. 3/4/85 pp. 65–68) Under these circumstances we agree with appellant that the substance of the potential conflict continues to exist.

The concern of this Court is the potential for a conflict of interest or abuse of power by an individual in a position such as a police captain who also is involved in a private detective business.

"The concern is that persons holding public office and given extraordinary authority for the benefit of the public might use that authority specifically for the benefit of private persons." *Commonwealth v. Gregg,* 262 Pa.Super. 364, 366, 396 A.2d 797, 798 (1979). "Where public officials are involved, even the appearance of a conflict of interest should be avoided." *Little v. Freeman,* 86 Pa.Commw. 378, 484 A.2d 873, 874 (1984).

 Courts have consistently held, based upon public policy, that a person may not be granted a private detective

license if simultaneously he would be employed as a public official with police powers. *In Re Private Detective License of Keibler,* 279 Pa.Super. 276, 420 A.2d 1331 (1980); *Commonwealth v. Gregg, supra; In Re Stanley,* 204 Pa. Super. 29, 201 A.2d 287 (1964); *Little v. Freeman, supra; Little v. Freeman,* 31 Pa.D & C 3rd 479 (1983).

■ Under the present circumstances, with John Morris serving as a police captain while maintaining an ongoing relationship with Kuma, the concerns expressed in the cases noted are present. Mr. Morris and thus Kuma would have access to information and be in a position not enjoyed by other private detectives. The potential to use his position to the advantage of Kuma would create at least the appearance of a conflict of interest and a potential source of abuse. It is this we wish to avoid.

The fact that the business is primarily involved in providing security does not affect our finding. Upon granting of the license, the corporation would be able to perform any type of detective work it may choose. In addition, based on the testimony of Mr. Fleming, security work "almost always" ends up including investigative work. (N.T. 3/4/85, p. 49)

■ The concern we are addressing arises because of the high ranking police position held by Mr. Morris and the activities involved in the operation of a detective business. We specifically do not intend that this decision will preclude detective agencies from hiring off-duty policemen to serve as security guards and other such positions wherein the functions of the job do not create a potential for conflict or abuse of the individual's police position. We find a definite contrast between the potential for conflict and abuse in the hiring of off-duty policemen to perform guard or security duty and that which exists when a high ranking police official also maintains a position as an officer, owner or employee of a detective agency.

It is our determination that the lower courts ruling as to the issuance of a license should stand. Based upon the

finding that James Fleming was properly qualified under § 14(a) of the Private Detective Act, the agency has met the requirements for licensing.

We order as a condition to the retention of the license that John Morris sever all ties with Kuma and resign as a consultant to the company.

We note that under 22 P.S. § 15 the district attorneys of the various counties have the power to enforce the provisions of the act. Any violation of this order would thus be grounds to seek revocation of Kuma's license.

The Order of the lower court is affirmed, subject to compliance with the conditions set forth in this Opinion.