J-S03039-15

2015 PA Super 87

| IN RE: APPLICATION OF JOHN P. CLADER, TRADING AS LT INVESTIGATIONS, FOR A PRIVATE DETECTIVE LICENSE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | No. 2094 EDA 2014 |

Appeal from the Order Entered June 26, 2014
In the Court of Common Pleas of Pike County
Civil Division at No(s): CV128-2014

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and OTT, J.

OPINION BY OTT, J.:                                    **FILED APRIL 20, 2015**

The Commonwealth appeals from the order entered June 26, 2014, in the Court of Common Pleas of Pike County, issuing John P. Clader, trading as LT Investigations, a private detective license subject to certain restrictions. The Commonwealth contends the trial court erred in granting Clader a private detective license pursuant to The Private Detective Act, 22 P.S. § 11 *et seq* ("the Act") because (1) Clader is an appointed school police officer with law enforcement powers, and (2) the court had no statutory authority to grant a limited private detective license.  For the following reasons, we affirm.

Clader is a school police officer, who works as Director of School Security for the Wallenpaupack School District in Pike County, Pennsylvania. On January 23, 2014, he petitioned the court for a private detective license pursuant to the Act. The Commonwealth opposed the petition, and a hearing was held on June 3, 2014. Thereafter, Clader was granted a license by the trial court, subject to the following limitation:

> [T]he Petitioner, who has previously been appointed as a school police officer for the Wallenpaupack Area School District, shall not engage in any private detective business, as defined under the Act, in any matter involving school administrators, teachers, employees, officials, parents or students of the Wallenpaupack Area School District without prior written approval of the Court and notice thereof to the Pike County District Attorney."

Order and Certificate of License, 6/26/2014. This appeal followed.[1]

The Commonwealth first argues that the trial court erred because the issuance of a private detective license to Clader, an individual with law enforcement powers as part of his public employment, demonstrates a potential for abuse and is a conflict of interest. Secondly, the Commonwealth maintains that the Act does not allow the court to grant a private detective license subject to limitations. We discuss these arguments together.

_____

[1] The Commonwealth timely complied with the order of the trial court to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal.

At the outset, we note our standard of review is plenary. *See Phillips v. A-Best Prod. Co.*, 665 A.2d 1167, 1170 (Pa. 1995). The question whether a school district police officer can hold a private detective license pursuant to the Act is an issue of first impression. Therefore, we look to analogous case law as a starting point.

This Court, in *Commonwealth v. Centeno*, 5 A.3d 1248 (Pa. Super. 2010), considered the Commonwealth's claim that "the trial court erred in granting a private detective license to appellee because a prison guard is a peace officer and so is prohibited from holding a private detective license." *Id.* at 1249 (quotations omitted). The *Centeno* Court agreed with the Commonwealth, referencing the powers of a corrections officer, as follows:

> [A] corrections officer of a county corrections institution may exercise the powers of a peace officer in the performance of that person's duties generally in:
>
> (1) Guarding, protecting, and delivering inmates.
>
> (2) Protecting the property and interests of the county.
>
> (3) Capturing and returning inmates that may have escaped.

*Id.*, *citing* 61 P.S. § 1734. The Court opined:

> The Courts of Pennsylvania have consistently held that a law enforcement officer cannot simultaneously hold a license as a private detective. *See: In re Kuma K-9 Security, Inc.,* 351 Pa. Super. 471, 506 A.2d 445 (Pa. Super. 1986) (issuance of private detective license made contingent on resignation of police officer as consultant); *Commonwealth v. Gregg,* 262 Pa. Super. 364, 396 A.2d 797 (Pa. Super. 1979) (denying the issuance of private detective license to a probation officer); *Stanley Appeal,* 204 Pa. Super. 29, 201 A.2d 287 (Pa. Super. 1964) (private detective license was suspended upon its holder being elected as

- 3 -

a constable). Thus, although the trial court was correct in observing that there is no reported decision precluding a corrections officer from holding a license as a private detective, the weight of authority is in favor of the position espoused by the Commonwealth, namely that "as a matter of public policy, persons vested with the authority of a peace officer, by virtue of their public employment, cannot be licensed as private detectives, because of the obvious potential for abuse and conflict of interest." Brief of Appellant, p. 4. *See generally: In re Application of Millennium Consulting & Associates,* 804 A.2d 735, 736 (Pa. Cmwlth. 2002) (potential for abuse, as opposed to evidence of actual abuse, and appearance of impropriety are reasons for denial of private detective license to active duty law enforcement officers).

*Id.* Therefore, this Court reversed the order issuing a private detective license to the prison guard petitioner.

*In re Kuma K-9 Security, Inc.*, 506 A.2d 445 (Pa. Super. 1986), this Court addressed the situation where a private detective agency retained a police captain as a consultant. This Court reasoned that the agency, through its consultant, "would have access to information and be in a position not enjoyed by other private detectives" and that this potential advantage to the agency "would create at least the appearance of a conflict of interest and a potential source of abuse." *Id.* at 449. Therefore, the issuance of a license to the agency was conditioned upon the police captain severing all ties and resigning as a consultant. *Id.*

In *Commonwealth v. Gregg*, 396 A.2d 797 (Pa. Super. 1979), this Court held probation officers should not be granted private detective licenses. The *Gregg* Court relied on *In re Stanley*, 201 A.2d 287 (Pa.

- 4 -

Super. 1964), wherein this Court sustained the suspension of a private detective license to an individual elected as a constable, and explained:

> "A constable's authority to execute warrants of arrest, to arrest on sight for breach of the peace, vagrancy and drunkenness, to carry a deadly weapon concealed upon his person and to be present at the polling places in order to keep the peace, is not conferred upon private citizens, including private detectives. To give these powers, conferred upon a duly elected constable for the benefit of the public, to a person licensed to act for [sic] private persons, creates the distinct possibility of grave abuses. The public policy against allowing one clothed with such extraordinary authority to act as a private detective for private employers seems obvious." **Stanley Appeal**, 204 Pa.Super. at 32, 201 A.2d at 289.

**Gregg,** at 798. This Court reasoned that not only did probation officers have police powers, as in **Stanley**, but also had access to criminal records of any individual, a privilege not enjoyed by all other private detectives and which created the potential for abuse. **Id.** at 798–799.

Finally, in **In re Application of Millenium Consulting & Associates,** 804 A.2d 735 (Pa. Cmwlth. 2002), the Commonwealth Court affirmed the denial of a private detective license to a firm that consisted of two partners, who were active full-time members of the Kutztown Borough Police Department. The Commonwealth Court noted "[t]he concern is that a public official given authority for the benefit of the public might use that authority for the benefit of private persons." **Id.** at 736 (citation omitted). In reaching its conclusion, the Commonwealth Court reiterated "… where public officials are involved, even the appearance of a conflict of interest should be avoided." **Id.** at 737 (quotations and citation omitted).

Turning to the powers of an appointed school police officer, 24 Pa.C.S.

§ 7-778, provides, in pertinent part:

(a) Any school entity or nonpublic school may apply to any judge of the court of common pleas of the county within which the school entity or nonpublic school is situated to appoint such person or persons as the board of directors of the school entity or administration of the nonpublic school may designate to act as school police officer for said school entity or nonpublic school. The judge, upon such application, may appoint such person, or so many of them as he may deem proper, to be such school police officer and shall note the fact of such appointment to be entered upon the records of the court. The judge may, at the request of the school entity or nonpublic school, grant the school police officer the power to arrest as provided in subsection (c)(2), the authority to issue citations for summary offenses or the authority to detain students until the arrival of local law enforcement, or any combination thereof.

****

(c) Such school police officer so appointed shall severally possess and exercise all the following powers and duties:

    (1) To enforce good order in school buildings, on school buses and on school grounds in their respective school entities or nonpublic schools. For purposes of this clause, the term "school bus" shall include vehicles leased by the school entity or nonpublic school to transport students and vehicles of mass transit used by students to go to and from school when the school police officer is responding to a report of an incident involving a breach of good order or violation of law.

    (2) If authorized by the court, to exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipality wherein the school property is located.

(3)   If authorized by the court, to issue summary citations or to detain individuals until local law enforcement is notified.

24 Pa.C.S. § 7-778(c).

In **Commonwealth v. Williams**, 749 A.2d 957 (Pa. Super.  2000), this Court recognized that for school police officers to have the authority of municipal police officers, they must have been authorized by the court pursuant to Section 7-778 of the Public School Code.[2]  **Id.** at 963.  In this case, the court's order appointing Clader as a school police officer for the Wallenpaupack School District specifically authorized Clader "to possess and exercise all of the powers and duties set forth in 24 P.S. Section 7-778(c)(1-3)."[3]  As Clader was authorized to exercise the powers of municipal police, the issue is whether there exists a potential for abuse and conflict of interest that warrants the denial of a private detective license while he works as a school police officer.

---

[2] In **Williams**, the school police officers were not authorized to exercise the powers of municipal police. **Id.**, 749 A.2d at 963.  This Court held the school police officers, who were empowered under Section 7-778(c)(1) to enforce order in school buildings, on school buses, and on school grounds, acted without authority when they conducted search and seizure of student's vehicle parked on city street, off school property.  **Id.**

[3] Order, dated 6/27/2013, attached as Exhibit "A" to Answer of the District Attorney to Application of John P. Clader Trading as LT Investigations for a Private Detective License.

Clader's authorized powers must be considered in the context of the Section 7-778, which provides that a school police officer's authority is limited to school purposes. Specifically, the duties of a school police officer are "[t]o enforce good order in school buildings, on school buses and on school grounds." 24 Pa.C.S. § 7-778(c)(1). In conjunction with the officer's arrest power, Section 7-778(c)(2) provides that, if authorized by the court, a school police officer has the same powers that are presently or may thereafter be exercised under authority of law or ordinance by municipal police wherein the school property is located. Finally, under Section 7-778(c)(3), a school police officer, if authorized by the court, can issue summary citations or detain individuals until local law enforcement is notified. It bears further note that the salaries of school police are paid by the school district, Section 7-778(e), and they are, "at all times," employees of the school district, Section 7-778(g).[4]

_____

[4] In **In Interest of R.H.**, 791 A.2d 331 (Pa. 2002) (plurality), the Pennsylvania Supreme Court, in an opinion announcing the judgment of the Court, held that where a student was taken into custody and questioned on school grounds, school police officers "were 'law enforcement officers' within the purview of **Miranda**." **Id.** at 334. We note this decision addressed **Miranda** concerns, and, as a plurality decision, is not binding precedent. The dissenting remarks of then Justice Castille, now retired Chief Justice, are apt to the present discussion:

Although school police may be authorized to exercise the same powers as municipal police on school property pursuant to 24 P.S. § 7-778(c)(2), these powers must be viewed in the context of the statute as a whole and in light of the function of schools. The duties of the school police are not solely, or even

*(Footnote Continued Next Page)*

Plainly, the authorized powers of school police are limited, in terms of both scope and jurisdiction, compared to the broad county-wide or state-wide powers of police, probation, and correction officers. Consistent with Section 7-778(c)(1-3), the policy of the Wallenpaupack School District limits school police to "Investigate, document any violation of law and make arrests for summary offenses," and "Detain students that violate any law that constitutes a misdemeanor or a felony." N.T., 6/3/2014, at 9–10, 15; Petitioner's Exhibit, 1. Clader testified that he had issued citations for summary offenses, but had not made any arrests for felonies or misdemeanors. He stated he had been involved in six or seven

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> predominantly, to investigate criminal conduct, but rather the prescribed duty is to "enforce good order in school buildings, on school buses and on school grounds." § 7-778(c)(1). Thus, school police are authorized to detain individuals, but only "until local law enforcement is notified." § 7-778(c)(3). Most importantly, the salaries of school police are paid by the school district, § 7-778(e), and they are, "at all times," employees of the school district, § 7-778(g). Thus, it is the school district, not the police department, that school police answer to. When § 7-778 is read _in toto_, it is apparent that school police officers appointed under the statute are not so much law enforcement officials charged with ferreting out criminal activity -- as the lead opinion necessarily assumes in granting relief here -- but are specialized members of the school staff, employed and compensated by the school district, whose purpose is to assist teachers and school administrators in the important, unique requirement of maintaining safety, order, and discipline.

_Id._ at 341–342 (Castille, J., dissenting).

misdemeanor/felony investigations, and those had been turned over to the Pennsylvania State Police. *Id.* at 10–11. The specific policy of the Wallenpaupack Area School District is that school police do not make felony or misdemeanor arrests. *Id.* at 13.

Furthermore, Clader testified he cannot obtain criminal history information as a school police officer. While Clader stated the Wallenpaupack Area School District has an "ORI number,"[5] assigned by the Pennsylvania State Police, he explained this number gives school police access to driver's license, registration and stolen vehicle information.[6] *Id.* at 12. Therefore, Clader is without access to criminal background information.

We find Section 7-778 draws a distinction between school police and municipal police, and we conclude Clader's limited school police authority does not present the concern that this authority might be used for the benefit of private persons.[7] Therefore, based on our review of Section 7-

_____

[5] Clader explained, "ORI is a number you are assigned so you can file non-traffic citations or other things at District Justice Courts." N.T., 6/3/2014, at 12.

[6] *See* N.T., 6/3/2014, at 11–13, 15; Petitioner's Exhibit 2, Letter from Pennsylvania State Police to Clader, 9/30/2013 (explaining that the ORI "will permit your agency to access Drivers License, Registration and Hot File Information *only. **Criminal History Information is restricted to Criminal Justice/Law Enforcement***." (emphasis added)).

[7] The Commonwealth argues that "[t]he obvious potential for abuse and conflict of interest that exists in county probation officers and correctional officers exists with a sworn police in the school setting," Commonwealth Brief at 13–14, but does not discuss what information Clader has access to

*(Footnote Continued Next Page)*

778 and the testimony presented at the hearing on the petition, and in light of Clader's limited police authority in school areas only, and his non-access to criminal history information, we conclude that *Centeno* and the precedent cited therein, that holds a law enforcement officer may not simultaneously hold a private detective's license, are not controlling in this case to preclude the issuance of a private detective license to Clader, while he is employed as a school police officer.

Moreover, we find no error in the court's decision to include a limitation on the license, specifying that Clader cannot engage in any private detective business "in any manner involving school administrators, teachers, employees, officials, parents or students of the Wallenpaupack Area School District, without prior approval of the Court and notice thereof to the Pike County District Attorney without the court's prior approval and notice to the District Attorney."[8] The Commonwealth contends the Act does not allow the court to grant a private detective license subject to limitations upon the nature of matters the detective may investigate. The Commonwealth, however, does not point to any authority in the statute or case law to support its position. Therefore, we find this argument unavailing.

_(Footnote Continued)_ ————————

at the school district that is likely to be used improperly in his work as a private detective.

[8] Order and Certificate of License, 6/26/2014.

- 11 -

Here, the trial court, recognizing that Clader is authorized as provided in Section 7-778(c)(1-3), explained that it carefully crafted its order to "specifically eliminate[] any potential for abuse that would normally exist when allowing an official with police powers to be licensed [and] eliminate[] the appearance of impropriety because the Applicant is prohibited from using any information he may obtain on such individuals against them in his private business." Trial Court Opinion, 8/28/2014, at 3. We find that the limitation serves as an added safeguard for the school community, and is not improper under the Act.

Given the limited scope and jurisdiction of school police powers, and the absence of any authority that prohibits the court's reasonable restriction upon Clader's private detective license, we find no basis upon which to disturb the decision of the trial court.

Order affirmed.

Judge Panella joins in this opinion.

President Judge Emeritus Ford Elliott files a dissenting opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2015