J-E03008-15

2016 PA Super 49

| IN RE: APPLICATION OF JOHN P. CLADER, TRADING AS LT INVESTIGATIONS, FOR A PRIVATE DETECTIVE LICENSE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | No. 2094 EDA 2014 |

Appeal from the Order Entered June 26, 2014
In the Court of Common Pleas of Pike County
Civil Division at No(s): CV128-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
          SHOGAN, J., LAZARUS, J., OTT, J., STABILE, J., and JENKINS, J.

DISSENTING OPINION BY OTT, J.:              **FILED FEBRUARY 24, 2016**

While the Majority points out the public policy considerations at issue when law enforcement officers seek a private detective license, I believe that, for purposes of a private detective license, a school police officer's position does not equate with other law enforcement positions. Furthermore, I view the court's limitation upon the license issued pursuant to the Private Detective Act of 1953 ("Act"), 22 P.S. § 11, et seq., as an added safeguard that is not improper under the Act.  Therefore, I would affirm the order of the trial court granting Mr. Clader a private detective

license, subject to certain restrictions. Accordingly, very respectfully, I dissent.

Regarding the issuance of a private detective license, the Act provides, in part:

> When the application shall have been examined, and such further inquiry and investigation made as the court of quarter sessions or the district attorney shall deem proper, and when the court of quarter sessions shall be satisfied of the good character, competency and integrity of such applicant, … the court of quarter sessions shall issue and deliver to such applicant a certificate of license to conduct such business …

22 P.S. § 16(a). Therefore, the applicant must demonstrate good character, competency, and integrity. Although law enforcement officers are not statutorily barred from holding private detective licenses, case law establishes that, as a matter of public policy, law enforcement officers may not simultaneously hold a license as a private detective. *See In re Centeno*, 5 A.3d 1248 (Pa. Super. 2012) (corrections officer); *In re Kuma K-9 Security, Inc.*, 506 A.2d 445 (Pa. Super. 1986) (police captain); *Commonwealth v. Gregg*, 396 A.2d 797 (Pa. Super. 1979) (probation officer); *In re Stanley*, 201 A.2d 287 (Pa. Super. 1964) (constable). *See also, In re Application of Millennium Consulting & Assocs.*, 804 A.2d 735 (Pa. Cmwlth. 2002) (full-time members of borough police department); *Little v. Freeman*, 484 A.2d 873 (Pa. Cmwlth. 1984) (mayor). I recognize these cases stand for the principle that the appearance of impropriety or the potential for abuse and conflict of interest warrants the denial of a private

detective license in cases involving applicants who are law enforcement officers. However, I do not believe the instant case is controlled by this precedent. A review of the above-cited cases, in chronological order, guides my analysis.

In the case of **In re Stanley**, 201 A.2d 287 (Pa. Super. 1964), this Court dealt with a private detective who was elected constable for the Forty-Fifth Ward of the City of Philadelphia, and became clothed with authority "to execute warrants of arrest, to arrest on sight for breach of the peace, vagrancy and drunkenness, to carry a weapon concealed upon his person and to be present at polling places in order to keep the peace." **Id.** at 289. The **Stanley** Court found the constable's "extraordinary authority" was not conferred upon private citizens and raised public policy concerns that the constable would use that authority for the benefit of private persons when acting as a private detective. **Id.** Therefore, this Court sustained the suspension of a private detective license while the constable served in his elected position.

**Commonwealth v. Gregg**, 396 A.2d 797 (Pa. Super. 1979), involved two probation officers who, by statute, were "peace officers" with "police powers and authority throughout the Commonwealth" to arrest probation or parole violators with or without a warrant. **Id.** at 798, *citing* 19 P.S. § 1091. The **Gregg** Court found that in addition to their statutorily granted powers, the probation officers could "conceivably examine the police records of any

individual." ***Id.*** at 798. This Court concluded the probation officers should not hold private detective licenses while they continued in their public employment, and reversed the trial court's order granting the licenses. ***Id.***

Furthermore, in ***Little v. Freeman***, 484 A.2d 873 (Pa. Cmwlth. 1984), involving a declaratory judgment action, the Commonwealth Court affirmed the trial court's holding that the appellant's position as the duly elected Mayor of the Borough of Kennett Square created at least the appearance of a conflict of interest with his employment as a private investigator. ***Id.*** at 874. The Mayor had submitted an affidavit stating that he had potential access to certain police records, but he and his employees under the private detective license would not conduct private investigations in the borough. ***Id.*** The Commonwealth Court agreed with the trial court that the Mayor's intention did not remove the appearance of a conflict of interest. ***Id.***

In ***Kuma K-9 Security, Inc.***, 506 A.2d 445 (Pa. Super. 1986), this Court addressed the situation where a private detective agency retained a police captain as a consultant. This Court reasoned that the agency, through its consultant, "would have access to information and be in a position not enjoyed by other private detectives" and that this potential advantage to the agency "would create at least the appearance of a conflict of interest and a potential source of abuse." ***Id.*** at 449. Therefore, this Court conditioned its affirmance of the trial court's grant of a private detective license to the agency on the resignation of the police captain from the agency.

More recently, in *In re Application of Millennium Consulting & Associates*, 804 A.2d 735 (Pa. Cmwlth. 2002), the Commonwealth Court affirmed the denial of a private detective license to a firm that consisted of two partners who were active, full-time members of the Kutztown Borough Police Department. In support, the Court cited *Kuma K-9 Security, Inc., supra; Gregg, supra; In re Stanley, supra,* and *Little, supra*. *See Millennium Consulting & Associates*, 804 A.2d at 736–737. The Commonwealth Court noted, "Police patrolmen have access to various resources that the public does not, such as police department files, reports, and other non-public databases. That singular access is precisely the rationale supporting the decisions just discussed." *Id.* at 737.

Finally, this Court, in *In re Centeno*, 5 A.3d 1248 (Pa. Super. 2010), considered the Commonwealth's claim that "the trial court erred in granting a private detective license to appellee because a prison guard is a peace officer and so is prohibited from holding a private detective license." *Id.* at 1249 (quotations omitted). The *Centeno* Court agreed with the Commonwealth, stating that "corrections officers are also considered law enforcement officers," and "[t]he Courts of Pennsylvania have consistently held that a law enforcement officer cannot simultaneously hold a license as a private detective." *Id.* at 1249.

In contrast to the individuals in the above-cited cases, Mr. Clader has limited law enforcement-type powers and duties as a school police officer.

- 5 -

Specifically, the duties of a school police officer are "[t]o enforce good order in school buildings, on school buses and on school grounds." 24 P.S. § 7-778(c)(1). Section 7-778(c)(2) provides that, if authorized by the court, a school police officer has the same powers that are presently or may thereafter be exercised under authority of law or ordinance by municipal police wherein the school property is located. Finally, under Section 7-778(c)(3), a school police officer, if authorized by the court, can issue summary citations or detain individuals until local law enforcement is notified. Here, Mr. Clader is authorized by the court with the powers and duties specified in 24 P.S. § 7-778(c)(1-3).

The policy of the Wallenpaupak Area School District School Resource Officer Program includes objectives to "[i]nvestigate [and] document any violation of law and make arrests for summary offenses," and "[d]etain students that violate any law that constitutes a misdemeanor or a felony." N.T., 6/3/2014, at 9–10, 15; Petitioner's Exhibit 1. Mr. Clader testified that he had issued citations for summary offenses, but had not made any arrests for felonies or misdemeanors. N.T., 6/3/2014, at 10. He also stated he had been involved in six or seven misdemeanor or felony investigations, which had been turned over to the Pennsylvania State Police. *Id.* at 10–11. Mr. Clader testified the specific policy of the Wallenpaupack Area School District is that school police do not make felony or misdemeanor arrests. *Id.* at 13.

Furthermore, Mr. Clader stated the Wallenpaupack Area School District has an Originating Agency Identifier (ORI) assignment number. However, the ORI number only gives school police access to driver's license, registration and stolen vehicle information. *Id.* at 12. Therefore, although Mr. Clader can obtain certain information from the Commonwealth Law Enforcement Assistance Network (CLEAN), he has no access to criminal background information that is provided to other types of law enforcement officers. *See* N.T., 6/3/2014, at 11–13, 15; Petitioner's Exhibit 2, Letter from Pennsylvania State Police to Mr. Clader, 9/30/2013 (explaining that the "'VS' ORI will permit your agency to access Drivers License, Registration and Hot File Information *only. Criminal History Information is restricted to Criminal Justice/Law Enforcement*." (emphasis added)).

I read 24 P.S. § 7-778 to draw a distinction between school police and municipal police, which, I believe, is demonstrated by Mr. Clader's testimony, discussed above. When viewed in context of the statute and the school system's mission, Mr. Clader's power is limited, in terms of scope and jurisdiction, in comparison to the broad county-wide or state-wide powers of police, probation and corrections officers. As then Justice (now former Chief

Justice) Castille explained in his dissent in *In Interest of R.H.*, 791 A.2d

331 (Pa. 2002) (plurality):[1]

> Although school police may be authorized to exercise the same powers as municipal police on school property pursuant to 24 P.S. § 7-778(c)(2), these powers must be viewed in the context of the statute as a whole and in light of the function of schools. The duties of the school police are not solely, or even predominantly, to investigate criminal conduct, but rather the prescribed duty is to "enforce good order in school buildings, on school buses and on school grounds." § 7-778(c)(1). Thus, school police are authorized to detain individuals, but only "until local law enforcement is notified." § 7-778(c)(3). Most importantly, the salaries of school police are paid by the school district, § 7-778(e), and they are, "at all times," employees of the school district, § 7-778(g). Thus, it is the school district, not the police department, that school police answer to. When § 7-778 is read *in toto*, it is apparent that school police officers appointed under the statute are not so much law enforcement officials charged with ferreting out criminal activity -- as the lead opinion necessarily assumes in granting relief here -- but are specialized members of the school staff, employed and compensated by the school district, whose purpose is to assist teachers and school administrators in the important, unique requirement of maintaining safety, order, and discipline.

*Id.* at 341–342 (Castille, J., dissenting).

This analysis highlights the difference between school police officers

and other law enforcement officers.[2]  In the order appointing Mr. Clader as a

_____

[1] In *In Interest of R.H.*, 791 A.2d 331 (Pa. 2002) (plurality), the Pennsylvania Supreme Court determined that where a student was taken into custody and questioned on school grounds, school police officers "were 'law enforcement officers' within the purview of *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)]." *Id.* at 334.

[2] The Commonwealth asserts that "the full municipal police powers granted to Mr. Clader … demonstrate a sworn school police officer is most akin to a
*(Footnote Continued Next Page)*

school police officer for the Wallenpaupak Area School District, he was authorized "to possess and exercise all of the powers and duties set forth in 24 P.S. Section 7-778(c)(1-3)." Order, 6/27/2013. As such, under 24 P.S. § 7-778(c)(1) and (c)(2), Mr. Clader was authorized to exercise the same powers while on school property as the municipal police, including the power to arrest, issue summary citations and detain individuals until local law enforcement is notified, in order to "enforce good order in school buildings, on school buses and on school grounds," pursuant to 24 P.S. § 7-778(c)(1). His power, in terms of scope and jurisdiction, is limited, consistent with his duties as a school district police officer employed by the school district.

Therefore, given the limited powers and duties of school police, I would find no error in the trial court's decision to grant Mr. Clader's application for a private detective license. Furthermore, I believe that, while it was not necessary for the trial court to impose restrictions in order to grant the private detective license to Mr. Clader, the trial court could properly impose restrictions as an additional safeguard.

_____
*(Footnote Continued)*

municipal officer as in **Millennium Consulting**." Commonwealth's Substituted Brief, at 17. However, the Commonwealth offers this conclusory statement without any practical analysis to demonstrate how Mr. Clader's work for the school district would create the appearance of a conflict of interest or potential for abuse.

Nothing in the Act prevents the court from granting a private detective license subject to limitations, such as the one imposed in this case, as follows:

> This Certificate of License is also issued subject to the limitation that [Mr. Clader], who has previously been appointed as a school police officer for the Wallenpaupak Area School District, shall not engage in any private detective business, as defined by the Act, in any matter involving school administrators, teachers, employees, officials, parents or students of the Wallenpaupack Area School District, without prior approval of the Court and notice thereof to the Pike County District Attorney.

Order and Certificate of License, 6/26/2014.

In fact, this Court, in *Kuma K-9 Security, Inc., supra*, affirmed the trial court's order granting a private detective license to the appellee-agency, "subject to compliance with the conditions set forth in this Opinion." *Id.*, 506 A.2d at 449. Specifically, the *Kuma* Court ordered as a condition to the agency's retention of the license that a police captain, who was employed as a consultant, "sever all ties with Kuma and resign as a consultant to the company." *Id.* at 449. Our Court stated: "We note that under 22 P.S. § 15 the district attorneys of the various counties have the power to enforce the provisions of the act. Any violation of this order would thus be grounds to seek revocation of Kuma's license." *Id.*

The trial court explained that it carefully crafted its order to "specifically eliminate[] any potential for abuse that would normally exist when allowing an official with police powers to be licensed [and] eliminate[] the appearance of impropriety because the Applicant is prohibited from using

- 10 -

any information he may obtain on such individuals against them in his private business." Trial Court Opinion, 8/28/2014, at 3. As such, I believe this court-ordered limitation serves as an added safeguard for the school community, and is not improper under the Act.

Accordingly, I dissent.

Judge Panella joins this dissenting opinion.