417 A.2d 190

## In re SENTRY SECURITY, INC.

### Appeal of DISTRICT ATTORNEY OF CHESTER COUNTY.

Supreme Court of Pennsylvania.

Submitted April 22, 1980.

Decided July 3, 1980.

J. Curtis Joyner, Donald A. Mancini, Asst. Dist. Attys., Chester, for appellant.

Michael L. Levy, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On March 5, 1976, appellee, Sentry Security, Inc., applied to the Court of Common Pleas of Chester County for a detective license, pursuant to the Private Detective Act of 1953 [1]. Appellant, the District Attorney of Chester County, who is responsible for enforcing the provisions of the Act, 22 P.S. § 15, did not object to the application and the court granted the license on April 22, 1976. Four months later, the District Attorney petitioned the court for revocation of the previously issued license, alleging that the license had been improperly granted, alleging that Sentry did not meet the statutory requirements prescribed in the act. The Court of Common Pleas revoked the license on May 17, 1977. The Superior Court reversed, *In re: Sentry Security, Inc.*, 259

---

[1]. The Act of August 21, 1953, P.L. 1273, § 1, et seq., 22 P.S. § 11, et seq., requires a license for private detective work, 22 P.S. § 13, and further requires that application be made to the Court of Common Pleas, 22 P.S. § 14.

Pa.Super. 385, 393 A.2d 880 (1978), and we granted appellant's petition for allowance of appeal.

The act provides in § 14(a), 22 P.S. § 14(a), that an individual applying for a license must have been:

> ". . . *regularly employed as a detective, or* shall have been a member of the United States Government investigative service, a sheriff, *or* member of a city police department of a rank or grade higher than that of patrolman, *for a period of not less than three years."* (Emphasis added.)

If the applicant is a corporation, at least one officer must meet the above-quoted requirement. Whether Joseph P. Shepsko, president of Sentry, has met the licensing requirement is the issue in the instant appeal.

At the original hearing when the license was granted, the following constitutes the complete record of testimony:

> "THE COURT: This an application for license as a private detective.
>
> "MR. HALPREN: (Attorney for Sentry) Yes, Your Honor. The application is made on behalf of Sentry Security, Inc., a Pennsylvania corporation, trading under a fictitious name of Sentinel Security. The principles are Joseph Shepsko, president, and Warren Frock, secretary-treasurer, both of whom are present.
>
> They have complied with the requirements insofar as the paid-in capital is concerned and the necessary fees.
>
> "THE COURT: I'm told the District Attorney has no opposition to the application, as represented to me this morning. Very good.
>
> I've read the application, and I am glad to say both individuals are known to the Court as persons of good character, and I am glad to sign the order.
>
> "MR. HALPREN: May I file it with the papers and the surety bond?
>
> "THE COURT: Here. You take them all.
>
> Good luck. You're in business."

Within four months, however, the District Attorney determined that Shepsko was not qualified and filed a petition to revoke the license.

The Superior Court's account of the testimony taken at that hearing is as follows:

".  .  . The Commonwealth presented the testimony of only one witness: Lawrence Drake, Supervisor of Schuylkill Township, a second class township, since January, 1974. Drake testified that his duties included supervision of the township police department. At the time Drake assumed his official position, the department comprised a police chief and four full-time patrol officers, including Shepsko. All patrol officers investigated crimes, made reports, patrolled for traffic offenses, and assisted the police forces of surrounding townships. Most of the crimes committed during Drake's tenure as supervisor and investigated by patrol officers fell into the following categories: minor juvenile disturbances, robberies, drug traffic investigations, and traffic accidents. In drug and homicide cases, the police department would call in the Chester County Detective's Office for assistance. Shepsko also acted as administrative officer and was responsible for assigning patrol periods, filling out forms, and scheduling patrol officers for court. In January, 1975, Shepsko received a promotion to sergeant; he acted as the officer in charge of the department.

"Joseph Shepsko testified as follows. When he first joined the Schuylkill Township Police Department, the force consisted of one police chief and two patrol officers; when he left the department, the force included five full-time police officers. During his six years of service, Shepsko participated in investigations involving over 800 criminal arrests. This figure included major crimes as well as juvenile and summary offenses, but did not embrace traffic arrests. Moreover, Shepsko made numerous other investigations in cases which did not result in arrests. According to Shepsko, his investigation of criminal complaints involved interviewing witnesses and suspects, obtaining physical evidence, preparing complaints and tes-

tifying in court. Shepsko gave a detailed account of the investigative techniques he had employed in both a burglary and in a rape case. While his department did request the assistance of the Chester County Detective's Office when criminal investigations required the use of sophisticated equipment or crossing over state and county lines, the Chester County Detective's Office reciprocally requested the assistance of the Schuylkill Township Police Department in investigations of township citizens. During the two periods that Shepsko served as officer in charge, he assumed full responsibility of the police department, supervised all stages of criminal investigations, and reported directly back to the township supervisor.[6]

"[6] Schuylkill Township police officers Robert Lee Fort and Thomas Maroney corroborated Shepsko's description of his investigative experience and talents. Furthermore, Phoenixville District Justice John T. Jeffers testified that Shepsko had appeared before him on numerous occasions in connection with a wide range of criminal cases." *In re Sentry Security, Inc., supra,* 259 Pa.Super. at 388–89, 393 A.2d at 882.

The court, by reading the act literally, ordered that Sentry's license be revoked because Shepsko had never been regularly employed as a detective.

The Superior Court reversed on the basis of its decision in *In re: Harding,* 246 Pa.Super. 180, 369 A.2d 871 (1977). Applying a functional analysis, the court held a detective in the Bureau of Investigation of the Department of the Auditor General qualified under the spirit of the act based on his past work experience. The act itself sets forth the duties performed by a private detective:

"(a) 'Private detective business' shall mean and include the business of private detective, private detective business, the business of investigator, or the business of watch, guard, or patrol agency.

"(b) 'Private detective business' shall also mean and include, separately or collectively, the making, for hire, reward, or for any consideration whatsoever, of any investigation or investigations for the purpose of obtaining information with reference to any of the following matters, notwithstanding the fact that oth-

er functions and services may also be performed for fee, hire, or reward:

"(1) Crime or wrongs done or threatened against the government of the United States of America or any state or territory of the United States of America.

"(2) The identity, habits, conduct, movements, whereabouts, affiliations, transactions, reputation, or character, of any person, group of persons, association, organization, society, other groups of persons, partnership, or corporation.

"(3) The credibility of witnesses or other persons.

"(4) The whereabouts of missing persons.

"(5) The location or recovery of lost or stolen property.

"(6) The causes and origin of, or responsibility for, fires, or libels, or losses, or accidents, or damage, or injuries, to real or personal property.

"(7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

"(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.

"(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employes, agents, contractors and subcontractors.

"(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

"(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return

thereof, or the performing of the service of such guard or other person, or any of said purposes." 22 P.S. § 12. Finding that Harding's prior work experience included performance of six of the specifically enumerated duties, the Superior Court held that Harding met the requirements of the act.

■ In the instant case, the Superior Court found that Shepsko had, by virtue of his work for the Schuylkill Township Police Department, performed *seven* of the duties, i. e., those set forth in § 12(b)(1), (2), (3), (5), (9) and (10). We also believe that Shepsko's work experience amounted to the functional equivalent of three years of detective work.

■ We further believe the fact that Shepsko was a patrolman for most of his service is of no moment. As the previously quoted requirements section states, an individual must have been:

".  .  . *regularly employed as a detective* .  .  . *or* member of a *city* police department of a rank or grade higher than that of patrolman, for a period of not less than three years." 22 P.S. § 14(a). (Emphasis added.)

As a member of a five-man township police department, Shepsko, along with patrol duties, had regularly performed investigative duties of a detective. *In re Harding, supra.* We believe the Legislature, when speaking of city police departments, implicitly recognized that city patrolmen's duties are limited to the patrol function. As Shepsko was not a member of a city police department, that disjunctive clause of 22 P.S. § 14(a) is inapplicable. We thus believe Shepsko qualifies as a private detective under the act.

Order of Superior Court is affirmed.

NIX, J., files a dissenting opinion.

NIX, Justice, dissenting.

Section 4(a) of the Private Detective Act, Act of August 21, 1953, P.L. 1273, § 4(a), 22 P.S. § 14(a) provides that an individual seeking a private detective's license must establish, along with other requirements, that he has been regularly employed as a detective. This language is clear and

unambiguous. The only exceptions listed in § 4(a) to this requirement are (a) where the applicant has been a member of the United States Government investigative service, (b) where the applicant has been a sheriff, or (c) members of *city* police departments of a rank or grade higher than that of patrolman, for a period of not less than three years. The record establishes, and the majority implicitly concedes that Joseph P. Shepsko, president of appellee, Sentry Security, Inc., had not been regularly employed as a detective at the time that he sought the application for detective's license in this case. The record also is equally as clear that he did not fall within any of the three aforementioned exceptions. Nevertheless, the majority has seen fit to ignore this non-compliance with the statutory mandate and provides the appellee corporation with a private detective license. I cannot accept this blatant disregard of the unequivocal language of the statute and also the resultant distortion of the obvious statutory scheme. I therefore dissent.

Joseph P. Shepsko sought a license as a private detective on the basis of his work experience with the Schuylkill Township Police Department. Shepsko served in that police department with the rank of patrolman from March 3, 1969 until October 8, 1974. On October 9, 1974, he was promoted from patrolman to sergeant. After holding that rank for approximately ten months, he resigned from the department on June 30, 1975. Based on these facts, the Court of Common Pleas properly concluded that Shepsko was not regularly employed as a detective, nor did he fall within the three exceptions carved by the legislature and therefore granted the District Attorney's petition to revoke the license that had been issued. The Superior Court and now the majority justify the overturning of this obviously correct result by relying on a concept of functional analysis which was first articulated by the Superior Court in *In Re Harding*, 246 Pa.Super. 180, 369 A.2d 871 (1977). In my judgment this "functional analysis" approach is merely a thinly veiled ruse to permit a court to issue licenses of this type to applicants who do not meet the explicit standards set forth by the legislature.

The basic concepts of statutory construction which are to be utilized to determine legislative intention requires (a) that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly; (b) that every statute shall be construed, if possible, to give effect to all of its provisions; (c) that where the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit and (d) that the General Assembly does not intend the result that is absurd or unreasonable. Statutory Construction Act of 1972, 1 Pa. C.S.A. §§ 1921(a) & (b), § 1922(1). In reaching the result, the majority and the Superior Court have ignored and offended each of these precepts.

The rationale supporting the functional analysis approach implicitly acknowledges its disregard of the first three principles listed above. Functional analysis is premised upon the fact that the applicant does not meet the literal requirement of having the requisite employment as a detective. Moreover, it also acknowledges that the particular applicant does not fall within one of the expressly enumerated exceptions. It therefore seeks to justify granting the license on a theory akin to substantial compliance. Wherein substantial compliance may be a reasonable approach when we are dealing with court promulgated rules, its validity is questionable where it is used to modify legislative mandates. It is particularly inappropriate in an area where the legislature has expressed its deep concern by providing a comprehensive and meticulously detailed regulatory scheme. The latter is the case in this instance.

The Private Detective Act was designed to afford the citizens of Pennsylvania the service of detectives whose reputation, moral character and ability were beyond reproach. The emphasis was not on encouraging a large supply of persons to serve in this capacity, but rather to restrict this privilege to only the best qualified, both morally and by training. Unlike the normal policeman, the private detective does not have the supervision of a hierarchy of the

department in which he serves. He makes the judgments as to the manner in which he acts and the matters in which he becomes involved. By virtue of this Act, he is permitted to intrude upon the privacy of individuals and other entities in multiple areas. *See* § 2, 22 P.S. § 12. In conferring such awesome power, the state, through its legislature, obviously has the power to determine those persons to whom it is to be given. The Court has no right to substitute its opinion for the legislative judgment of requisite qualifications. I am fully in accord with the following statement of Judge Price, in dissent, in the decision in *Harding*:

In order to protect Pennsylvania citizens from untrained, self-styled detectives, the legislature has prescribed strict qualifications for those who would become licensed detectives. The legislature possibly could have included a broader range of experiences without opening the occupation to poorly qualified applicants. However, the purpose of the judiciary is interpretation of statutes, not amendment of them. If the legislature had intended to qualify members of the Pennsylvania investigative service, it could specifically have done so. If the legislature had intended to qualify persons who had been regularly employed as investigators, it could specifically have done so.

The majority interprets the statute to mean that an investigator is a detective. I am unconvinced. There can be no doubt that detectives must possess the ability to investigate. But that does not mean that an investigator is necessarily a detective. The word detective connotes experiences other than that of investigating. *In re Harding*, 246 Pa.Super. at 187–88, 369 A.2d at 874 (Price, J., dissenting).

Finally, the instant application of the functional analysis approach brings about a result which I think is totally absurd and unjustified, thereby violating the fourth rule of statutory construction referred to above. The exceptions to the requirement that the applicant must be regularly employed as a detective were carefully designed. As noted, those exceptions provided for one who served in an investi-

gative service of the United States Government, where the screening and training of the individual is of the highest quality; a sheriff, who by election of the people of his county has demonstrated that he has gained their trust and respect and a city police department officer who has not only served in the rank of patrolman, but also has served in a higher grade for a period of at least three years. The distinction between the city police officer and that of the officer of a township or some other political subdivision clearly evidences a recognition of the greater proficiency in training and supervision that is given by a metropolitan police department as opposed to their counterparts in smaller political subdivisions. Today's result ignores this scheme which is designed to assure a certain caliber of expertise and would place a township patrolman in a position to receive the license in question and yet exclude his counterpart in a larger, more sophisticated governmental unit. The majority attempts to rationalize this anomaly by suggesting that a township patrolman has a broader police experience experience than the patrolman in a major metropolitan area. To state this proposition is to expose its invalidity and, more importantly, to graphically demonstrate the error of the result reached herein today.