J-S12023-20 & J-S12024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE FIRM PROTECTION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: COMMONWEALTH OF | : | |
| PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1262 EDA 2018 |

Appeal from the Order Dated April 3, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-MD-0000249-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA H. NOLLIE | : | No. 1279 EDA 2018 |
| | : | |
| Appellee | : | |

Appeal from the Order April 3, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-MD-0000248-2018

BEFORE:    SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED MAY 15, 2020**

_____

[*] Retired Senior Judge assigned to the Superior Court.

In these two appeals,[1] the Commonwealth appeals from the orders entered April 3, 2018, in the Philadelphia Court of Common Pleas granting the applications for a private detective's license filed by Joshua H. Nollie[2] (Nollie) and his business The Firm Protection (TFP).[3]  The Commonwealth contends the trial court improperly granted the applications because Nollie and TFP did not demonstrate Nollie had sufficient experience under the Private Detective Act of 1953.[4]  For the reasons below, we reverse.

The relevant facts underlying these appeals are as follows.  On January 17, 2018, Nollie filed two petitions pursuant to the Private Detective Act:  (1) for a private detective license in his own name, and (2) for a private detective agency license in the name of TFP.  The trial court conducted a hearing on March 19, 2018.  At that time, the Commonwealth objected to the petitions because Nollie failed to demonstrate he had the "three years minimum of investigatory experience" required under the statute, and instead, Nollie's testimony was limited to his one and one-half years' experience as a correctional officer.  N.T., 3/19/18, at 6.  In response, Nollie explained that he also worked as a "security supervisor" at a research lab for several years,

_____

[1] We address these appeals together because they involve, essentially, the same parties and the same issue.

[2] Docket No. 1279 EDA 2019, for trial docket CP-51-MD-0000248-2018.

[3] Docket No. 1262 EDA 2019, for trial docket CP-51-MD-0000249-2018. Neither Nollie nor TFP has filed an appellee brief.

[4] 22 P.S. §§ 11-30.

where he "conducted security investigations[.]" *Id.* at 7. The Commonwealth's attorney stated:

> If [Nollie's] willing to go back to those — the earlier employment and bring something from that firm saying he — these were what his duties were; that he went and investigated on this or that, I don't think we would be having the objection that we do today.

*Id.* at 8. Nollie assured the court he could obtain an email from his former employer later that day. Therefore, the trial court continued the hearing until April 3rd so that the Commonwealth would have time to verify the supplemental information to be provided by Nollie. *Id.* at 13. Nollie subsequently provided a letter by his former employer.

At the April 3, 2018, hearing, the trial court stated:

> I reviewed the letter for [] Nollie as related to the private investigator license for both him and his firm. And I am going to grant the licenses.

N.T., 4/3/18, at 4. The Commonwealth offered no further objection. That same day, the court filed two certificates, one at each trial docket below, granting a private detective license in each matter. Thereafter, the Commonwealth filed timely notices of appeal at each docket, and complied with the court's directives to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

The Commonwealth raises the same issue in both appeals:

> Did the lower court improperly grant applicant's petition for a private detective's license, where [Nollie] was not qualified for such a license because he did not demonstrate that he had sufficient experience required under the statute?

Commonwealth's Brief at 4.[5]

The question on appeal involves statutory interpretation. Thus, we are presented with a "pure question[ ] of law for which our scope of review is plenary and standard of review is *de novo*." ***Commonwealth v. Petrick***, 217 A.3d 1217, 1224 (Pa. 2019).

The Private Detective Act details the requirements necessary for a person or corporation to obtain a private detective's license. "The district attorneys of the various counties have the power to enforce the provisions of [the A]ct." 22 P.S. § 15(a). A person or corporation intending to conduct a private detective business must apply for a license with the trial court in the county where the principal office of the business will be located. 22 P.S. §§ 13(a), 14. Pursuant to Section 14 of the Act, the license application must include the following:

> (a) If the applicant is a person, the application shall be signed and verified by such person . . . . The application shall state the full name, age, residence, present and previous occupations, of [the applicant], that he is a citizen of the United States, and shall also specify the name of the city, borough, township, or incorporated town, stating the street and number if the premises have a street and number, and otherwise such apt description as will reasonably indicate the location thereof, where is to be located the principal place of business, . . . , and such further facts as may be required by the court of quarter sessions, to show the good character, competency and integrity of [the applicant]. [The applicant] shall,

---

[5] Because the briefs filed by the Commonwealth in these two appeals are identical, with the exception of the name of the applicant, we will cite to the brief filed under Nollie's appeal at Docket No. 1279 EDA 2018.

together with such application, submit to the court of quarter sessions his photograph, . . . and also fingerprints of his two hands[.] . . . Every such applicant shall establish, to the satisfaction of the court of quarter sessions and **by at least two duly acknowledged certificates**, **that such applicant**, if he be a person, or, in the case of a . . . corporation, at least one member of such . . . corporation, **has been regularly employed as a detective**, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, **for a period of not less than three years**. Such application shall be approved as to each person or individual so signing the same by not less than five reputable citizens of the community in which such applicant resides or transacts business, or in which it is proposed to own, conduct, manage or maintain the . . . office for which the license is desired, each of whom shall certify that he has personally known the said person or individual for a period of at least five years prior to the filing of such application, that he has read such application and believes each of the statements made therein to be true, that such person is honest, of good character, and competent, and not related or connected to the person so certifying by blood or marriage. The certificate of approval shall be signed by such reputable citizens and duly verified and acknowledged by them before an officer authorized to take oaths and acknowledgment of deeds.

22 P.S. § 14(a) (emphases added). "If the applicant is a corporation, at least one officer must meet the above-quoted requirement." *In re Sentry Security, Inc.*, 417 A.2d 190, 191 (Pa. 1980). *See* 22 P.S. § 14(b) (requirements for corporate applicants).

Although Section 14 requires proof the applicant has been "regularly employed as a detective" for not less than three years, this Court explained that phrase "has never been limited to persons employed by law enforcement agencies." *In re Kuma K-9 Security, Inc.*, 506 A.2d 445, 447 (Pa. Super. 1986). Indeed, Section 12 defines a "private detective business" both in the

traditional sense, 22 P.S. § 12(a),[6] and with reference to investigatory duties performed in a job, 22 P.S. § 12(b). Section 12(b) provides:

> "Private detective business" shall also mean and include, separately or collectively, the making, for hire, reward, or for any consideration whatsoever, of any investigation or investigations for the purpose of obtaining information with reference to any of the following matters, notwithstanding the fact that other functions and services may also be performed for fee, hire, or reward:
>
> (1) Crime or wrongs done or threatened against the government of the United States of America or any state or territory of the United States of America.
>
> (2) The identity, habits, conduct, movements, whereabouts, affiliations, associations, transactions, reputation, or character, of any person, group of persons, association, organization, society, other groups of persons, partnership, or corporation.
>
> (3) The credibility of witnesses or other persons.
>
> (4) The whereabouts of missing persons.
>
> (5) The location or recovery of lost or stolen property.
>
> (6) The causes and origin of, or responsibility for, fires, or libels, or losses, or accidents, or damage, or injuries, to real or personal property.
>
> (7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

---

[6] *See* 22 P.S. § 12(a) (defining "private detective business" as "the business of private detective, private detective business, the business of investigator, or the business of watch, guard, or patrol agency").

(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.

(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employe[e]s, agents, contractors and subcontractors.

(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return thereof, or the performing of the service of such guard or other person, or any of said purposes. . . .

22 P.S. § 12(b)(1)-(11).

In **Sentry Security**, the Supreme Court approved a "functional analysis" test, which allows a trial court to consider the applicant's work experience, albeit not as a traditional detective, in light of the investigatory duties listed in Section 12(b). **Sentry Security**, 417 A.2d at 193. The Court found the applicant's "work experience," in which he performed seven of the duties listed in Section 12(b), "amounted to the functional equivalent of three years of detective work." **Sentry Security**, 417 A.2d at 193. **See also Kuma K-9 Security**, 506 A.2d at 448 (finding applicant "qualified under the statute" when his work experience in private detective agency for 11 years involved nine of the duties listed in Section 12(b)).

In the present case, the Commonwealth argues, first, that Nollie "did not comply with the requirements of the Act that he present the trial court with **at least two certificates** establishing" he had the requisite three years of experience as a detective under the Act. Commonwealth's Brief at 8 (emphasis added). Rather, it asserts, Nollie testified regarding his work as a corrections officer for one and one-half years (with no accompanying certification) and submitted a supplemental letter from his former employer regarding his work as a security supervisor for a research lab. *Id.* at 10. Moreover, the Commonwealth insists the experience described in the letter was "insufficient to meet the requirements of regular employment as a 'detective' under [Section 12(b) of] the Act." *Id.*

In support of its decision to grant the detective licenses, the trial court opined:

> [T]his Court initially reviewed [Nollie's] application on March 19, 2018. The application contained five notarized statements attesting to [Nollie's] good character with corresponding addresses and contact information from his employer and various friends and co-workers. The application . . . also contained two letters of reference, however, one of the letters was presented as an attachment (not open) in an email and not in actual letter form. The first letter outlined [Nollie's] good reputation as a Security Supervisor with Bard Holing, LLC. We accepted this letter as evidence that [Nollie] could competently utilize a private detective license. However, since [Nollie] had not been regularly employed as a detective, as required under the statute, [Nollie] was also required to provide another letter attesting to his experience and fitness to maintain a private detective license. Consequently, this Court allowed [Nollie] an opportunity to obtain a printed copy of the actual letter for the Court and the Commonwealth.

On April 3, 2018, upon reviewing the printed letter, this Court found that [Nollie's] experience as a corrections officer, security supervisor, executive protection driver, and contract security guard, qualified as experience to determine that [Nollie] had met the requisite qualifications to obtain a private detective license.

Trial Ct. Op., 9/17/19, at 4.

Upon our review of the certified record, we conclude Nollie did not comply with the formal requirement of the Act to attach to his application "at least two duly acknowledged certifications" that he "has been regularly employed as a detective . . . for a period of not less than three years." **See** 22 P.S. § 14. Although Nollie's application listed his former employment as a correctional officer, executive protection driver/assistant, security personnel, security supervisor, and executive protection agent, it failed to provide any description of his investigatory duties in those positions (as they relate to Section 12(b)), or the dates of his employment. On this basis alone, we could reverse because Nollie failed to comply with the formal requirements of the Act. **See Commonwealth v. Johnson**, 941 A.2d 1286, 1290 (Pa. Super. 2007) (affirming denial of private detective license on basis not relied upon by trial court; applicant's one-page list of character witnesses "did not comply with the Act's formal requirement that she attach, to her application," signed and certified certificates of approval by five character references).

Furthermore, we also agree with the Commonwealth's assertion that Nollie's former employment as a security supervisor, as outlined in the letter submitted by his former employer, did not demonstrate he had the requisite investigatory experience outlined in Section 12(b). The letter, authored by

- 9 -

Nollie's former supervisor Joseph Pathickal, stated that Nollie worked at Bard LLC "between 2011-2013 as a security supervisor." Letter, 3/21/2018, at 1. The only reference in the letter to the investigatory duties outlined in Section 12(b) was the following paragraph:

> [Nollie] has proven himself exceptional on investigative details. These details involved interviews, CCTV footage as well as man hours observing, and documenting movement of employees and guest[s. Nollie] has a keen eye and excellent skill sets when it comes to reading body language and behavior. He was essential in investigating and uncovering that two employees were stealing time as well as other in[t]er-office related issues.

*Id.* at 1.

The Commonwealth argues the letter "does not explain how many hours Nollie spent on these investigations, how he discovered any wrongdoing, and whether these investigations were a regular focus of his job[; nor did he or the trial court] attempt to explain . . . how those activities related to the factors listed in 22 P.S. § 12(b)." Commonwealth's' Brief at 11. We agree.

In **Sentry Security**, the Supreme Court reviewed the detailed testimony presented at the licensing hearing which described the applicant's duties as a patrol officer for the Schuylkill Township Police Department over a six-year period. **Sentry Security**, 417 A.2d at 192. The Court concluded that "by virtue of his work" in the police department, the applicant "performed seven of the duties" outlined in Section 12(b). *Id.* at 193. Similarly, in **Kuma K-9 Security**, this Court, citing to the hearing transcript, found that the applicant, who worked as a private investigator for 11 years, "took part in

hundreds of investigations involving nine of the eleven activities" listed in Section 12(b). *Kuma K-9 Security*, 506 A.2d at 448.

Conversely, here, the only account of Nollie's investigatory experience was (1) his testimony at the licensing hearing concerning his position as a correctional officer (only for one and one-half years), and (2) the limited description of his duties as a "security supervisor" in the letter provided by his former employer. Although the letter stated Nollie was employed at Bard for two years, it did not specify the amount of time Nollie spent performing the relevant investigatory duties outlined in Section 12(b). Accordingly, we agree with the Commonwealth that the trial court erred in granting both Nollie and TFP private detective licenses, and thus we reverse the orders on appeal.

Orders reversed. Jurisdiction relinquished.


Judge Colins joins this memorandum.

Judge Shogan files a dissenting memorandum.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/15/20</u>