393 A.2d 880

**In re SENTRY SECURITY, INC., Appellant.**

Superior Court of Pennsylvania.

Submitted March 29, 1978.

Decided Oct. 20, 1978.

386

Elliott D. Goldberg, Phoenixville, for appellant.

James Curtis Joyner, Assistant District Attorney, West Chester, for appellee.

Before JACOBS, Presiding Judge, and HOFFMAN, CER-CONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant corporation contends that the lower court erred in revoking its license to carry on a private detective business. We agree. Accordingly, we reverse the order of the lower court revoking appellant's license.[1]

On March 5, 1976, appellant corporation filed an application for a license to carry on a private detective business with the Chester County Court of Common Pleas. Because the Private Detective Act of 1953[2] [hereinafter The Act] requires an applicant corporation to demonstrate that at least one of its members possesses the necessary qualifications to be a private detective,[3] this application alleged that appellant's president, Joseph P. Shepsko, had been regularly employed as a detective for at least three years. In particular, the application stated that Shepsko had been regularly employed as a member of the Schuylkill Township Police Department in Chester County from March 3, 1969, to June, 1975. During this period, Shepsko regularly engaged in a combination of patrol and detective work. From June to November, 1971, he became the de facto officer in charge of the police department, and from March, 1974, to June, 1975, he served as Acting Sergeant in charge of the force. The application also listed Shepsko's extensive educational credits in the field of criminal investigation.[4]

1. Appellant also contends that the Commonwealth could not seek revocation of its license solely on the basis of facts in existence and known to the District Attorney at the time of the original issuance of the license. Because of our disposition, we do not reach this issue.

2. Act of August 21, 1953, P.L. 1273, § 1 et seq.; 22 P.S. § 11 et seq.

3. The Private Detective Act, *supra*, as amended, Act of April 30, 1957, P.L. 98, § 1; 22 P.S. § 14.

4. The Commonwealth concedes the accuracy of Shepsko's list of courses and does not dispute the value which appellant ascribes to this educational training.

On April 22, 1976, Judge SUGERMAN of the Chester County Court of Common Pleas conducted a brief hearing[5] and ordered that appellant be issued a certificate of license to conduct a private detective business for a period of two years. The order specified that the license ". . . shall at all time be revocable by the Court for cause shown."

On August 17, 1976, the Chester County District Attorney filed a petition in the Chester County Court of Common Pleas to revoke appellant's license because the District Attorney's investigation had disclosed that Joseph Shepsko did not have the qualifications or experience necessary for a private detective license. On August 26, 1976, appellant filed an answer in which it averred that Shepsko had the necessary qualifications because he had been regularly employed as a detective for at least three years.

On September 8 and 9, 1976, Judge STIVELY conducted a hearing on the Commonwealth's revocation petition. The Commonwealth presented the testimony of only one witness: Lawrence Drake, Supervisor of Schuylkill Township, a second class township, since January, 1974. Drake testified that his duties included supervision of the township police department. At the time Drake assumed his official position, the department comprised a police chief and four full-time patrol officers, including Shepsko. All patrol officers investigated crimes, made reports, patrolled for traffic offenses, and assisted the police forces of surrounding townships. Most of the crimes committed during Drake's tenure as supervisor and investigated by patrol officers fell into the following categories: minor juvenile disturbances, robberies, drug traffic investigations, and traffic accidents. In drug and homicide cases, the police department would call in the Chester County Detective's Office for assistance. Shepsko also acted as administrative officer and was responsible for

5. At this hearing, Judge SUGERMAN stated: "I'm told the D.A. has no opposition to this application, as represented to me this morning. Very good. I've read the application and I am glad to say both individuals [appellant's president, Shepsko, and its Secretary-Treasurer, Warren Frock] are known to this Court as persons of good character, and I am glad to sign this Order."

assigning patrol periods, filling out forms, and scheduling patrol officers for court. In January, 1975, Shepsko received a promotion to sergeant; he acted as the officer in charge of the department.

Joseph Shepsko testified as follows. When he first joined the Schuylkill Township Police Department, the force consisted of one police chief and two patrol officers; when he left the department, the force included five full-time police officers. During his six years of service, Shepsko participated in investigations involving over 800 criminal arrests. This figure included major crimes as well as juvenile and summary offenses, but did not embrace traffic arrests. Moreover, Shepsko made numerous other investigations in cases which did not result in arrests. According to Shepsko, his investigation of criminal complaints involved interviewing witnesses and suspects, obtaining physical evidence, preparing complaints and testifying in court. Shepsko gave a detailed account of the investigative techniques he had employed in both a burglary and in a rape case. While his department did request the assistance of the Chester County Detective's Office when criminal investigations required the use of sophisticated equipment or crossing over state and county lines, the Chester County Detective's Office reciprocally requested the assistance of the Schuylkill Township Police Department in investigations of township citizens. During the two periods that Shepsko served as officer in charge, he assumed full responsibility of the police department, supervised all stages of criminal investigations, and reported directly back to the township supervisor.[6]

At the conclusion of the hearing Judge STIVELY took the matter under advisement. On October 18, 1976, the Chester County Court of Common Pleas, sitting en banc, heard oral argument on the Commonwealth's petition. On May 17,

6. Schuylkill Township police officers Robert Lee Fort and Thomas Maroney corroborated Shepsko's description of his investigative experience and talents. Furthermore, Phoenixville District Justice John T. Jeffers testified that Shepsko had appeared before him on numerous occasions in connection with a wide range of criminal cases.

1977, Judge STIVELY entered an order revoking appellant's license. In his written opinion, Judge STIVELY argued that appellant's experience as a Schuylkill Township patrol officer did not constitute three years regular employment as a detective, and that granting appellant a license would violate the legislature's policy of sharply limiting the number of licensed private detectives. This appeal followed.[7]

■ Appellant contends that the lower court erred in concluding that appellant's president lacked the statutory qualifications to be a private detective. Section 14 of the Act provides, in pertinent part:

". . . Every such applicant shall establish, to the satisfaction of the court of quarter sessions [8] and by at least two duly acknowledged certificates, that such applicant, if he be a person, or, in the case of a partnership, association, or corporation, at least one member of such partnership, association, or corporation, *has been regularly employed as a detective*, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years." (emphasis added). The crucial issue in this case is whether the Commonwealth demonstrated [9] that appellant was unqualified

---

**7.** If unrevoked, appellant's two-year license would have expired on April 22, 1978. Nevertheless, this appeal is not moot. *See Secretary of Revenue v. John's Vending Corp.*, 453 Pa. 488, 309 A.2d 358 (1973). In the cited case, our Supreme Court held that expiration of a cigarette dealer's license did not render moot an appeal of a license revocation. The Court pointed out that a denial of review could prejudice the licensee in future applications and that resolution of the issues involved would be determinative of the licensee's right to seek a license.

**8.** Pa.Const. Art. 5, Schedule § 4 abolishes the courts of quarter sessions; the courts of common pleas now entertain applications for private detective licenses.

**9.** As the lower court noted in its opinion, the Commonwealth, as instigator of the revocation proceedings, bears the burden of proving appellant's lack of the requisite qualifications by a preponderance of the evidence. *See, e. g., Secretary of Revenue v. John's Vending Corp., supra.*

under this Section because he had not been "regularly employed as a detective" for more than three years.[10]

We believe that *Application for Harding*, 246 Pa.Super. 180, 369 A.2d 871 (1977) supplies the controlling precedent. In *Harding*, a detective in the Bureau of Investigation, a department of the Pennsylvania Auditor General's Office, applied for a private detective's license. The applicant alleged and proved that for a period of over three years, his duties entailed investigating violations of Pennsylvania law and reporting his findings to state enforcement agencies. More specifically, appellant conducted surveillances, collected evidence, contacted informants, examined records, interviewed witnesses, interrogated suspects, and prepared detailed reports of investigations setting forth the pertinent evidence, facts, and conclusions. Nevertheless, the lower court found the applicant had not been "regularly employed as a detective" within the meaning of the Act.

On appeal, our Court, confronted by a complete absence of appellate case law guidance, attempted to construct a meaningful and functional definition of "regularly employed as a detective." Our analysis commenced with an examination of the scope of activities encompassed within the Act's definition of "private detective business." [11] We then ob-

---

**10.** Both parties agree that appellant's president has never been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than patrol officer. We also emphasize that the issue before us is really quite narrow. The Commonwealth does not question the integrity or character of appellant's president nor does the Commonwealth intimate that he would be unable *in fact* to function competently as a private detective. The sole issue is whether appellant's president is *statutorily* qualified.

**11.** Section 12 of the Act defines "private detective business" and provides in pertinent part:

"(a) 'Private detective business' shall mean and include the business of private detective, private detective business, the business of investigator, or the business of watch, guard, or patrol agency.

"(b) 'Private detective business' shall also mean and include, separately or collectively, the making, for hire, reward, or for any consideration whatsoever, of any investigation or investigations for the purpose of obtaining information with reference to any of the follow-

served that ". . . the qualifications required by Section 14 were designed to make sure that only people of good character, integrity, and competence could obtain a license." *Supra,* 246 Pa.Super. at 185, 369 A.2d at 873. Finally, we concluded that the best method of gauging an applicant's future competence as a private detective is to evaluate his past performance over the specified time period of the activities common to his prior employment and the Act's definition of "private detective business." [12] Applying this

ing matters, notwithstanding the fact that other functions and services may also be performed for fee, hire, or reward:

"(1) Crime or wrongs done or threatened against the government of the United States of America or any state or territory of the United States of America.

"(2) The identity, habits, conduct, movements, whereabouts, affiliations, associations, transactions, reputation, or character, of any person, group of persons, association, organization, society, other groups of persons, partnership, or corporation.

"(3) The credibility of witnesses or other persons.

"(4) The whereabouts of missing persons.

"(5) The location or recovery of lost or stolen property.

"(6) The causes and origin of, or responsibility for, fires, or libels, or losses, or accidents, or damage, or injuries, to real or personal property.

"(7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

"(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.

"(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employes, agents, contractors and subcontractors.

"(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

"(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return thereof, or the performing of the service of such guard or other person, or any of said purposes. . . ."

**12.** To support this approach, *Harding* relied on two cases from neighboring jurisdictions. *See Norwood v. Ward,* 46 F.2d 312 (S.D. N.Y.1930), *aff'd, sub nom., Norwood v. Bennett,* 283 U.S. 800, 51 S.Ct. 494, 75 L.Ed. 1422 (1931); *Schulman v. Kelly,* 54 N.J. 364, 255 A.2d 250 (1969). Both *Norwood* and *Kelly* adopted a broad construc-

test in *Harding*, we found that the applicant had extensive qualifications as an investigator and had performed at least six of the functions specifically mentioned by the Act as constituting the business of a private detective agency. Because the applicant's work experience was functionally co-extensive with the work regulated by the statute, we ordered the lower court to grant the applicant a private detective's license.

 As in *Harding*, we believe that appellant's comprehensive criminal investigative work experience is the practical equivalent of regular employment as a detective over a sustained period of time. During his six years as a patrol officer and officer in charge of the Schuylkill Township Police Department, appellant participated in over 800 criminal investigations and performed the full gamut of investigative duties, including interviewing witnesses, interrogating suspects, contacting informants, collecting evidence, and preparing detailed reports of his investigations for purposes of possible prosecution. Specifically, appellant participated in at least seven of the activities delineated in Section 12(b)'s definition of "private detective business."[13] Thus, appellant's investigative work experience has been co-extensive with the activities regulated by the Act, and the Commonwealth has failed to show that appellant's president was unqualified to be a private detective under Section 14 of the Act. *See Harding, supra; Application of Nichols & Clark,*

tion of the statutory qualifications required for a private detective's license in order to obviate troublesome federal and state constitutional issues of equal protection and special privilege. *See also Application of Nichols & Clark, Inc.*, 2 Pa.D. & C.3d 385 (1977) in which the court, eschewing a narrow construction of the Act which might unconstitutionally make the private detective business the enclave of a privilege few, found a county probation officer statutorily qualified because his investigative work experience was co-extensive with the activities regulated by the Act.

**13.** *See* § 12(b)(1), (2), (3), (4), (5), (6) and (10).

394

*Inc., supra.*[14] Accordingly, we reverse the lower court's order revoking appellant's license.

Order reversed.

PRICE, J., files a concurring statement.

HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, concurring:

I concur in the result reached by the majority. I still adhere to my position that the test as annunciated by the majority in *In re Application for Private Detective License of Leo A. Harding, Appellant,* 246 Pa.Super. 180, 369 A.2d 871 (1977), is incorrect. However, based upon this record I believe that the appellant has satisfied the requirements as specifically required by the statute.

**14.** The Commonwealth argues that if we determine that Shepsko is qualified under Section 14 because he has been "regularly employed as a detective," we will render nugatory that section's alternate qualifying provision that allows an applicant to show that he has been a member of a city police department of a rank or grade higher than patrolman. In response, we emphasize that the qualifications enumerated in Section 14 are in the disjunctive; compliance with *any* provision satisfies the statutory mandates. Thus, although appellant has never been a member of a city police department, he may still have been "regularly employed as a detective" under *Harding's* interpretative gloss. While the legislature *presumed* that city police officers of a rank higher than patrol officer were competent to be private detectives, we do not believe that the legislature necessarily meant to preclude all other applicants with experience in police departments throughout the Commonwealth from demonstrating their competence *in fact* to be private detectives.