J-S09004-20
J-S09005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: JOHN L. WALLACE | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| APPEAL OF: COMMONWEALTH OF | : |
| PENNSYLVANIA | : |
| | : |
| | : |
| | : |
| | : |
| | : No. 1221 EDA 2018 |

Appeal from the Order Entered March 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-MD-0000356-2018

| | |
|---|---|
| IN RE: STEADFAST PROTECTION LLC | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| APPEAL OF: COMMONWEALTH OF | : |
| PENNSYLVANIA | : |
| | : |
| | : |
| | : |
| | : No. 1222 EDA 2018 |

Appeal from the Order Entered March 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-MD-0000359-2018

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 09, 2020**

In these related cases, Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), appeals from the March 23, 2018 orders granting private detective licenses to John L. Wallace ("Wallace") and Wallace's limited liability company, Steadfast Protection LLC ("Steadfast"), pursuant to the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Private Detective Act of 1953 ("the Private Detective Act" or "the Act"), 22 P.S. §§ 11-30.[1] We affirm the orders.

These appeals concern the same facts. Wallace filed an application for a private detective license in his own right, and he filed a separate application for Steadfast, as the sole owner and principal. The trial court docket number with respect to Wallace's application in his individual capacity is CP-51-MD-0000356-2018 ("356-2018"), and the trial court docket number in Steadfast's case is CP-51-MD-0000359-2018 ("359-2018").[2] On March 23, 2018, the trial court issued nearly identical orders at both trial court docket numbers. The order at 356-2018 granted Wallace a private detective license in his own right, and the order at 359-2018 granted Steadfast, a business entity, a private detective license based on the trial court's conclusion that Wallace was a qualified applicant on behalf of Steadfast. As stated, both appeals involve the same facts and procedural posture, and the Commonwealth raises the same issues and filed nearly identical briefs in each appeal. Therefore, we dispose of these matters in a single decision.

_____

[1] The trial court's order granting a license pursuant to the Private Detective Act does not fall within the provisions of Section 762 of the Judicial Code, 42 Pa.C.S. § 762 (describing the appellate jurisdiction of the Commonwealth Court); therefore, the appeal is properly before this Court. 42 Pa.C.S. § 742; *In re Centeno*, 5 A.3d 1248, 1248, n.1 (Pa. Super. 2010).

[2] When the electronic records in these matters were first received in this Court, the appeals at both 1221 EDA 2018 and 1222 EDA 2018 contained the records from 356-2018. However, we were able to obtain the record from 359-2018, which corresponds to the appeal at 1222 EDA 2018. We have corrected the appeal paragraph at 1222 EDA 2018 to reflect that it is an appeal from the order entered at 359-2018.

- 2 -

**Appeal at 1221 EDA 2018**

We first address the Commonwealth's appeal at Superior Court docket number 1221 EDA 2018, in which the Commonwealth challenges the trial court's grant to Wallace of a private detective license in his individual capacity.

The record reveals that, on January 23, 2018, Wallace filed an application for a private detective license in his individual capacity pursuant to Section 4 of the Private Detective Act. Wallace attached to his application a copy of his certificate of honorable discharge from the United States Marine Corps, which stated that he served on active duty in the Marine Corps from 1987 to 1992. Wallace Application, 1/22/18, Exhibit A. Wallace's primary specialty during his service was as a Spanish-language "cryptologic linguist" and he served in this role for three years and eight months. *Id.* Wallace also reported in his application a 2002 conviction for possession of a small amount of marijuana pursuant to Section 13(a)(31) of the Controlled Substance, Drug, Device, and Cosmetic Act ("the Drug Act"), 35 P.S. § 780-113(a)(31). Wallace Application, 1/22/18, Exhibit A.

A hearing was held before the trial court on March 23, 2018. At the hearing, Wallace testified that his cryptologic linguist work was as an "interrogator and linguist" while in the Marine Corps. N.T., 3/23/18, at 5. Wallace also served in the Marine Corps reserves for three years subsequent to his active duty service. *Id.* at 8. Wallace further testified that he worked as a corrections officer at Curran-Fromhold Correctional Facility in Philadelphia

for over six years and that he was currently taking classes with a private investigative service in Montgomery County, Pennsylvania. *Id.* at 5-7.

On March 23, 2018, the trial court entered an order granting Wallace's application. The Commonwealth filed a timely appeal.[3] On appeal, the Commonwealth asserts that the trial court erred in granting Wallace a private detective license because Wallace was not qualified under the Private Detective Act. Specifically, the Commonwealth avers that Wallace does not meet the statutory qualifications because he has a drug-possession conviction, which disqualifies him under Section 6 of the Act, and because Wallace lacks three years of relevant work experience pursuant to Section 4 of the Act.

We first address whether Wallace's drug-possession conviction made him statutorily ineligible for a license. The interpretation and application of a statute are questions of law. *C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013). Our standard of review is *de novo*, and our scope of review is plenary. *Id.*

The trial court concluded that this issue was waived because it was raised for the first time in the Commonwealth's concise statement of errors complained of on appeal, reasoning as follows:

> This [c]ourt did not take into consideration [Wallace's] prior conviction, because the Commonwealth failed to provide any evidence or argument that [Wallace] had been convicted of [a] criminal offense and that the offense disqualified [Wallace] from lawfully obtaining the private detective license. Pennsylvania

---

[3] The Commonwealth filed its concise statement of errors on May 10, 2018, and the trial court filed a Pa.R.A.P. 1925(a) opinion on June 26, 2019.

- 4 -

> [Rule of Appellate Procedure] 302(a) provides an issue not raised in the lower court is waived and cannot be raised for the first time on appeal.

Trial Court Opinion, 6/26/19, at 2, n.1. For the following reasons, we disagree with the trial court's finding of waiver.

Section 6 of the Private Detective Act provides, in relevant part, as follows:

> (a) When the application shall have been examined, and such further inquiry and investigation made as the court of quarter sessions[4] or the district attorney shall deem proper, and when the court of quarter sessions shall be satisfied therefrom of the good character, competency and integrity of such applicant, or, if the applicant be a partnership, association or corporation, of the individual members or officers thereof, and a period of ten days from the date of the filing of the application shall have passed, the court of quarter sessions shall issue and deliver to such applicant a certificate of license to conduct such business, and to own, conduct or maintain a bureau, agency, sub-agency, office or branch office for the conduct of such business on the premises stated in such application . . . . The license granted pursuant to this act shall last for a period of two years, but shall be revocable at all times by the court of quarter sessions for cause shown. . . .

> (b) Except as hereinafter provided in this subsection, **no such license shall be issued to any person who has been convicted in this State or any other state or territory of a felony, or any of the following offenses**: (1) illegally using, carrying or possessing a pistol or other dangerous weapon; (2) making or possessing burglar's instruments; (3) buying or receiving stolen property; (4) unlawful entry of a building; (5) aiding escape from prison; (6) **unlawfully possessing or distributing habit forming narcotic drugs**; (7) picking pockets or attempting to do so; (8) soliciting any person to commit

---

[4] Subsequent to the enactment of the Private Detective Act, the Pennsylvania Constitution abolished the courts of quarter sessions and "the courts of common pleas now entertain applications for private detective licenses." *In re Sentry Security, Inc.*, 393 A.2d 880, 883 n.8 (Pa. Super. 1978).

sodomy or other lewdness; (9) recklessly endangering another person; (10) making terroristic threats; or (11) committing simple assault.

22 P.S. § 16(a), (b) (emphasis added).

As stated above, Wallace admitted in his application that in 2002, he was convicted of possessing a small amount of marijuana. Wallace's Application, 1/23/18, at Exhibit A. Appended to his application, Wallace provided his Pennsylvania State Police criminal history record and a statement explaining the details of the conviction. *Id.* Thus, Wallace presented this issue to the trial court and provided the evidence himself. We discern no authority requiring the Commonwealth to further demonstrate that Wallace had a prior conviction when the issue already was before the court.

Although the trial court does not address this claim of error, it cites ***In re Sentry Security, Inc.***, 393 A.2d 880 (Pa. Super. 1978), in support of its position that the Commonwealth bore the burden of proving Wallace did not meet the requirements for a license under the Private Detective Act. Trial Court Opinion, 6/26/19, at 4. In ***Sentry Security***, the trial court granted the applicant a private detective license, and the Commonwealth offered no objection. ***Sentry Security***, 393 A.2d at 881 & n.5. In the application, the applicant averred that he "had been regularly employed as a detective for at least three years." *Id.* at 881. Because there was no objection, the trial court believed that the information in the application was accurate and correct, and it concluded that the applicant was qualified pursuant to Section 4 of the Act. *Id.* However, after learning that the applicant had not served as a detective,

- 6 -

the Commonwealth sought to revoke the license averring that the applicant's experience was not satisfactory under the Act. *Id.* In addressing the Commonwealth's motion for revocation, this Court stated:

> As the lower court noted in its opinion, the Commonwealth, as instigator of the revocation proceedings, bears the burden of proving [the applicant's] lack of the requisite qualifications by a preponderance of the evidence. *See*, *e.g.*, *Secretary of Revenue v. John's Vending Corp.*, [309 A.2d 358 (Pa. 1973)].

*Id.* at 883 n.9.

In the instant case, the Commonwealth did not seek to revoke a license that had been granted. Rather, during Wallace's application process, the Commonwealth asserted that Wallace was not eligible. In other words, no license had been granted, and the trial court was merely reviewing Wallace's eligibility for a license. As noted, Wallace presented his criminal history to the trial court. Nothing in *Sentry Security* requires the Commonwealth to introduce duplicative evidence of a criminal history that already was before the court. Section 6 of the Act provides that certain prior convictions make an applicant ineligible for a license, and the trial court is not to issue a license if the applicant is ineligible. 22 P.S. § 16(b). Herein, it is undisputed that evidence of Wallace's prior conviction was before the trial court. Therefore, we conclude this issue was not waived.

However, although we agree with the Commonwealth that the issue was not waived, we disagree with the Commonwealth's assertion that Wallace's 2002 conviction for possession of a small amount of marijuana makes him

ineligible for a private detective license under Section 6. The statute provides "no such license shall be issued to any person who has been convicted [of] . . . unlawfully possessing or distributing habit forming **narcotic** drugs[.]" 22 P.S. § 16(b)(6) (emphasis added). "Narcotic" is not defined in the Private Detective Act. However, as noted above, Wallace was convicted under Section 13(a)(31) of the Drug Act. The Drug Act does define narcotic drugs but excludes marijuana from that definition. 35 P.S. § 780-102(b).[5] For this reason, we cannot conclude that Wallace's conviction renders him ineligible for a license. Accordingly, the Commonwealth is due no relief on this issue.[6]

The Commonwealth also asserts that the trial court erred in concluding that Wallace satisfied the work experience requirement of Section 4 of the Private Detective Act. This provision provides, in relevant part, as follows:

---

[5] "Narcotic" is defined in the Drug Act as follows:

"Narcotic" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis: (i) opium, (ii) any opiate having an addiction-forming or addiction-sustaining capacity similar to morphine, but not including the isoquinoline alkaloids of opium, (iii) any compound, manufacture, salt, derivative, or preparation of opium or any opiate, and (iv) any substance, compound, manufacture, salt, derivative, or preparation thereof, which is chemically identical with any of the substances referred to in (i), (ii) or (iii).

35 P.S. § 780-102(b); *see also Commonwealth v. Ramos*, 83 A.3d 86, 90 n.5 (Pa. 2013) (stating that marijuana is a Schedule I controlled substance under the Drug Act but "it is not a 'narcotic drug'" under that law).

[6] For these reasons, we disagree with the Commonwealth's assertion that it "could simply petition the lower court to revoke Wallace's license based on his plain and uncontested prior conviction." Commonwealth's Brief at 9. As stated, Wallace's conviction does not render him ineligible.

Any person, partnership, association, or corporation, intending to conduct a private detective business, the business of investigator, or the business of watch, guard or patrol agency, or the business of a detective agency, and any person, partnership, association, or corporation, intending to conduct the business of furnishing or supplying information as to the personal character of any person, or as to the character or kind of the business and occupation of any person, partnership, corporation, society, or association, or any person or group of persons, or intending to own, conduct, manage or maintain a bureau or agency for the above mentioned purposes, or, while engaged in other lawful business activities, also intending to engage in any one or more of the activities set forth in subsections (a), (b) and (c) of section two of this act [22 P.S. § 12], except exclusively as to the financial rating, standing and credit responsibility of persons, partnerships, associations, or corporations, shall, for each such bureau or agency, and for each and every sub-agency, office and branch office to be owned, conducted, managed or maintained by such person, partnership, association or corporation for the conduct of such business, file, in the office of the clerk of the court of quarter sessions of the county wherein the principal office of such business is located, a written application, duly signed and verified, as follows:

(a) If the applicant is a person, the application shall be signed and verified by such person, and if the applicant is a partnership or association, the application shall be signed and verified by each individual composing or intending to compose such partnership or association. . . . **Every such applicant shall establish, to the satisfaction of the court of quarter sessions and by at least two duly acknowledged certificates, that such applicant, if he be a person, or, in the case of a partnership, association, or corporation, at least one member of such partnership, association, or corporation, has been regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years.** . . .

22 P.S. § 14(a) (emphasis added). Thus, under the Private Detective Act, an applicant must establish that he "has been regularly employed as a detective" for three years or, in the alternative, that he has served for at least three

years as "a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman." ***Id.***

The trial court concluded that Wallace satisfied the work experience requirement and stated as follows:

> [Wallace's] experience as an interrogator and linguist in the United States Marine Corp[s] for five years, undoubtedly satisfies the statutory three-year investigative experience requirement. [Wallace's] experience as an interrogator and linguist is similar to the applicant in [***In re Kuma K-9 Security, Inc.***, 506 A.2d 445 (Pa. Super. 1986),] who had conducted several criminal investigations for [a] private detective agency. The Private Detective Act of 1953 mandates experience where investigative skills are paramount, as evidenced by the statute's enumerated list. Since the statute does not require the applicant's experience to have been completed within a law enforcement agency, we find that [Wallace's] experience constitutes the investigative skills contemplated by the statute.

Trial Court Opinion, 6/26/19, at 5 (footnote omitted). We agree with the trial court's conclusion.

Court have traditionally employed a "functional analysis" with reference to the types of investigative matters of a "private detective business" as defined in the Private Detective Act. 22 P.S. § 12(a), (b); ***Kuma K-9 Security***, 506 A.2d at 447-48; ***Sentry Security***, 417 A.2d at 193. The Act states that a private detective business shall include "the making, for hire, reward, or for any consideration whatsoever, of any investigation or investigations for the purpose of obtaining information with reference to **any of the following matters**":

(1) **Crime or wrongs done or threatened against the government of the United States of America** or any state or territory of the United States of America.

(2) The identity, habits, conduct, movements, whereabouts, affiliations, associations, transactions, reputation, or character, of any person, group of persons, association, organization, society, other groups of persons, partnership, or corporation.

(3) The credibility of witnesses or other persons.

(4) The whereabouts of missing persons.

(5) The location or recovery of lost or stolen property.

(6) The causes and origin of, or responsibility for, fires, or libels, or losses, or accidents, or damage, or injuries, to real or personal property.

(7) The affiliation, connection, or relation, of any person, partnership, or corporation, with any union, organization, society, or association, or with any official member or representative thereof.

(8) With reference to any person or persons seeking employment in the place of any person or persons who have quit work by reason of any strike.

(9) With reference to the conduct, honesty, efficiency, loyalty, or activities, of employes, agents, contractors and subcontractors.

(10) The securing of evidence to be used before any authorized investigating committee, board of award, board of arbitration, or in the trial of civil or criminal cases.

(11) The furnishing, for hire or reward, of watchmen, or guards, or private patrolmen, or other persons, to protect persons or property, or to prevent the theft or the unlawful taking of goods, wares and merchandise, or to prevent the misappropriation or concealment of goods, wares or merchandise, money, bonds, stocks, choses in action, notes, or other valuable documents, papers, and articles of value, or to procure the return thereof, or the performing of the service of such guard or other person, or any of said purposes.

22 P.S. § 12(b) (emphasis added).

Here, Wallace served on active duty in the Marine Corps for five years and for three years and eight months of this period he worked as a cryptologic linguist with Spanish language expertise, rising to the rank of corporal. N.T., 3/23/18, at 5-8; Wallace Application, 1/22/18, Exhibit A. When asked by the trial court what types of investigative work he performed, Wallace stated that he "worked for NGSH security book activity" and that he was stationed in Guantanamo Bay Detention Camp in Cuba and in Panama.[7] N.T., 3/23/18, at 8. Wallace explained that his duties required him to "listen[] in" on communications and also to perform interrogations. *Id.* We conclude that Wallace's Marine Corps service was analogous to that of a detective under the Act because it required the investigation of "[c]rime or wrongs done or threatened against the government of the United States of America." 22 P.S. § 12(b)(1). Furthermore, listening in on communications and performing interrogations would entail other statutorily enumerated activities, such as determining the credibility of witnesses or other persons, 22 P.S. § 12(b)(3), and the identity, habits, and conduct of individuals or organizations. 22 P.S. § 12(b)(2).

While the Commonwealth contends that Wallace's military service does not satisfy Section 4(a) of the Act because he does not have the "requisite **criminal** investigative experience under the statute," Commonwealth's Brief

[7] The record reflects that Wallace, in fact, testified that he "was stationed at Guantanamo Panama." N.T., 3/23/18, at 8. We presume that Wallace meant that he was stationed at the Guantanamo Bay Detention Camp in the nation of Cuba, and he was also stationed in the nation of Panama.

at 13 (emphasis added), as we have explained, "the term 'detective' or the phrase 'regularly employed as a detective' have never been limited to persons employed by law enforcement agencies." *In re Kuma K-9 Security, Inc.*, 506 A.2d 445, 447 (Pa. Super. 1986); *see also In re Harding*, 369 A.2d 871, 872-74 (Pa. Super. 1977) (holding that a detective in the Bureau of Investigations in the Pennsylvania Auditor's General's office satisfied the work requirements of the Act even though he was not employed in a law enforcement function). The Commonwealth further contrasts this case with *Sentry Security* and *Kuma K-9 Security* wherein the applicants were determined to have participated in six and nine of the eleven listed activities, respectively.[8] *See Sentry Security*, 417 A.2d at 193; *Kuma K-9 Security*, 506 A.2d at 448. However, the statute clearly provides that a private detective business involves "any" one of the listed activities. 22 P.S. § 12(b). The trial court found that Wallace's military service was analogous to the statutory duties of a detective, and we must defer to the role of the trial court,

---

[8] The Commonwealth also distinguishes this case from *Kuma K-9 Security* because in that case the appellant submitted "two certificates" to document his work experience in compliance with Section 4(a). *See* Commonwealth's Brief at 12 (quoting *Kuma K-9 Security*, 506 A.2d at 446); *see also* 22 P.S. § 14(a) ("Every such applicant shall establish, to the satisfaction of the court of quarter sessions and by at least two duly acknowledged certificates . . ."). However, Appellant listed his military service in his application and also separately attached as an exhibit to the application a copy of a form DD-214 "Certificate of Release or Discharge from Active Duty." Wallace Application, 1/22/18, § 4, Exhibit A. Furthermore, Wallace described the nature of his military service upon examination by the trial court. N.T., 3/23/18, at 5-8. Therefore, Wallace complied with the requirement of Section 4(a) that he submit two certificates of his work experience to the trial court.

rather than this Court, in assessing the credibility of testimony and making findings of fact. *Carlino East Brandywine, L.P. v. Brandywine Village Association*, 197 A.3d 1189, 1207 (Pa. Super. 2018); *see also* 22 P.S. § 14(a) (providing that an applicant for a private detective license must establish "to the satisfaction of the court of" common pleas that they met the work experience requirement).

Although the trial court did not address the issue, we conclude that Wallace also satisfied Section 4(a)'s work experience requirement because he was "a member of the United States government investigative service" for over three years. 22 P.S. § 14(a). The Act does not define "the United States government investigative service," nor does such a body exist within the federal government.[9] Furthermore, this requirement is not by its plain text restricted to the investigation of violations of the criminal laws of the United States, and there are numerous bodies within the federal government that perform investigative work, such as the Internal Revenue Service and the Central Intelligence Agency, that do not primarily perform a law enforcement function. Therefore, we interpret the requirement that a private detective license applicant was a "member of the United States government

_____

[9] As this provision is ambiguous, we therefore must turn to our rules of statutory construction, which requires that we give effect to the legislative intent underlying the statute. *McGrath v. Bureau of Professional and Occupational Affairs, State Board of Nursing*, 173 A.3d 656, 662 (Pa. 2017) (citing 1 Pa.C.S. § 1921(a), (c)). We are also mindful of the fact that we must construe statutory terms "according to their common and approved usage." 1 Pa.C.S. § 1903(a).

investigative service" to mean that the applicant served in an investigative capacity at any agency, branch, or body within the federal government, whether that body is primarily engaged in criminal investigative work or not.[10]

Here, as a Spanish-language cryptologic linguist in the Marine Corps, Wallace "listened in" on communications and performed interrogations while based at United States military bases abroad. This undoubtedly constitutes investigative work performed on behalf of the United States government and while serving in the United States military. Thus, Wallace satisfied the work experience requirement that he worked for three or more years in "the United States government investigative service."

Accordingly, we conclude that the trial court correctly determined that Wallace satisfied the work requirement of the Private Detective Act and granted Wallace's petition for a private detective license. We therefore affirm the order appealed at 1221 EDA 2018, which was entered at trial court docket number 356-2018.

---

[10] This interpretation of the Act is consistent with the statutory work requirements in effect in two of our neighboring states. N.J. Stat. § 45:19-12 (providing that an applicant by showing that he "at least 5 years' experience as an investigator . . . with an investigative agency of the United States of America or any State, county or municipality thereof"); N.Y. Gen. Bus. Law § 72 (work requirement for may be satisfied where the applicant has been employed for more than three years as an "investigator in an agency of the state, county, or United States government" performing functions similar to those of a private detective).

## Appeal at 1222 EDA 2018

We turn now to the Commonwealth's appeal at Superior Court docket number 1222 EDA 2018. In this appeal, the Commonwealth avers that the trial court erred in granting Steadfast, a business entity, a private detective license. The Commonwealth asserts that the sole member of Steadfast, Wallace, was not qualified for a license in his individual capacity, and therefore, Steadfast was not qualified for a license. The record does not reveal a separate trial court opinion at this docket number. However, the facts are the same, except that this appeal involves the order granting Steadfast a private detective license.

Pursuant to Section 4(b) of the Private Detective Act, a business entity qualifies for a private detective license where the entity's owners and officers satisfy the requirements set forth for an individual under Section 4(a).[11] ***See***

---

[11] Section 4(b) states as follows:

(b) If the applicant is a corporation, the application shall be signed and verified by the president, secretary and treasurer thereof, and shall specify the name of the corporation, the date and place of its incorporation, the location of its principal place of business, and the name of the city, borough township, or incorporated town, stating the street and number if the premises have a street and number, and otherwise such apt description as will reasonably indicate the location thereof, where is to be located the bureau, agency, sub-agency, office or branch office for which the license is desired, the amount of the corporation's outstanding paid up capital stock and whether paid in cash or property, and, if in property, the nature of the same, and shall be accompanied by a duly certified copy of its certificate of incorporation. **Each and every requirement of clause (a) of this section as to a person or individual member of a partnership or association shall apply to the president, secretary and treasurer, and each such officer, his successor and successors, shall, prior to entering**

***Kuma K-9 Security***, 506 A.2d at 448 (in order for a business entity to possess a private detective license, an individual applicant must satisfy the qualifications for a license); ***see also*** 22 P.S. §§ 14, 16 (enumerating the qualifications for a business entity to obtain a license). Thus, Steadfast could not obtain a license unless Wallace, as Steadfast's sole owner and officer,[12] satisfied the requirements for licensure. 22 P.S. § 14(b).

In our disposition of the appeal at 1221 EDA 2018, we concluded that Wallace satisfied the statutory qualifications and affirmed the grant of Wallace's petition. Because Wallace is qualified for a license, and the Commonwealth has raised no independent objection to Steadfast's licensure, Steadfast is also eligible for a private detective license as a business entity. ***Kuma K-9 Security***, 506 A.2d at 448. Therefore, we affirm the order granting Steadfast a private detective license.

_____

**upon the discharge of his duties, sign and verify a like statement, approved in like manner, as is by clause (a) prescribed in the case of a person or individual member of a partnership or association.** In the event of the death, resignation or removal of such officer, due notice of that fact shall forthwith be given in writing to the court of quarter sessions, together with a copy of the minutes of any meeting of the board of directors of said corporation, certified by the secretary, indicating the death, resignation or removal of such officer, and the election or designation of the successor of such deceased, resigned or removed officer.

22 P.S. § 14(b) (emphasis added).

[12] Wallace is the sole owner of Steadfast and the individual applicant on Steadfast's behalf. Steadfast's Application, 1/23/18.

## **Conclusion**

For the reasons set forth above, we conclude that the trial court did not err in concluding that Wallace satisfied the requirements for licensure under the Private Detective Act and granting him a license. Thus, we affirm the order appealed at 1221 EDA 2018. Moreover, because Wallace was qualified to obtain a private detective license, Steadfast, having Wallace as its sole owner and officer, qualifies for a private detective license as a business entity. Therefore, we also affirm the order appealed at 1222 EDA 2018.

Orders affirmed.

Judge Lazarus joins the Memorandum.

Judge Shogan files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/20